391 So.2d 60 (1980)
Antha Lee DAUZAT, Plaintiff and Appellee,
v.
Malcolm J. DAUZAT, Defendant and Appellant.
No. 7914.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1980.
Harold J. Brouillette, Marksville, for defendant-appellant.
Michael Johnson, Cottonport, for plaintiff-appellee.
Before CULPEPPER, CUTRER and SWIFT, JJ.
CULPEPPER, Judge.
Antha Lee Dauzat sues her husband, Malcolm J. Dauzat, for divorce and for past due alimony pendente lite. The husband does not contest the divorce, but he does contend appellee remitted her rights to alimony pendente lite by an oral agreement after judicial separation but before divorce. The district court granted the divorce and held defendant liable for $2,500 in back alimony pendente lite plus $250 in attorney's fees. Defendant appeals only from that portion of the judgment awarding plaintiff past due alimony pendente lite and attorney's fees. The wife answered the appeal, seeking an increase in the alimony award.
*61 The issue is whether the obligation to pay alimony pendente lite may be waived or remitted by oral agreement between the spouses after the judgment of separation but prior to divorce without a modification of the judgment awarding the alimony. We conclude it may not.
Malcolm J. Dauzat and Antha Lee Dauzat were judicially separated on June 9, 1978. The judgment ordered defendant to pay his wife $500 per month as alimony pendente lite. Also, the judgment stated "said alimony shall terminate upon the plaintiff securing gainful employment, upon the completion of her schooling."
For the first two months, defendant made all alimony payments in accordance with the separation judgment. In early August of 1978, Mrs. Dauzat informed her husband she desired to cash two certificates of deposit, which were community assets, and take her one-half of the proceeds. Defendant was unwilling to forfeit the interest on the certificates by early withdrawal. He also preferred a full community settlement rather than a piecemeal partition of the community. This impasse was avoided when Mrs. Dauzat, by oral agreement, offered to forego her right to future alimony pendente lite if her husband would agree to cash these certificates of deposit. The certificates were cashed the same day of the agreement, and Mrs. Dauzat received $22,959, representing her one-half of the proceeds.
Following this agreement, defendant stopped making alimony payments to plaintiff. In October of 1979, plaintiff, through her new attorney, filed this suit for divorce and for past due alimony accruing from the date of defendants' last payment. Her petition contained no reference to the agreement. At the hearing for divorce, plaintiff testified she agreed to waive her rights to alimony on the advice of her attorney that she would no longer be entitled to alimony if she received the proceeds from the certificates of deposit. Both defendant and plaintiff's former attorney testified that defendant's sole reason for cashing the certificates of deposit was in exchange for plaintiff's agreement to waive her right to further alimony pendente lite.
Counsel for appellant cites to us much authority from the law on remission of debt found in Book 3, Title IV, Chapter 5 of the Louisiana Civil Code entitled "Of The Manner In Which Obligations May Be Extinguished." A judgment ordering the payment of alimony pendente lite, it is urged, represents nothing more than a debt, which, like any other debt, can be voluntarily remitted by the obligee. Appellant contends the agreement made in the office of plaintiff's attorney constituted a valid remission of the debt, since a remission need not be in writing and no particular form is necessary. We do not agree.
A judgment ordering the payment of alimony pendente lite is not controlled by the above cited rules on remission of debts. LSA-C.C. Article 232 provides for the reduction or discharge from payment of alimony as follows:
"Art. 232. When the person who gives or receives alimony is replaced in such a situation that the one can no longer give, or that the other is no longer in need of it, in whole or in part, the discharge from or reduction of the alimony may be sued for and granted."
Jurisprudence construing Article 232 has established the rule that the only remedy available to a husband to relieve himself of the obligation to pay alimony decreed in a judgment is by a judicial proceeding to have the judgment amended, suspended or terminated. In Pisciotto v. Crucia, 224 La. 862, 71 So.2d 226 (1954) the court held with regard to alimony ordered for support of the wife and children:
"... that liability cannot be avoided by simply claiming that the alimony was not due, since a reduction of alimony or a discharge from the obligation to pay may be granted only from and after the time when it is sought, by suit or in answer to a suit to enforce payment. Article 232, LSA-Civil Code; Snow v. Snow, supra, 188 La. at page 670, 177 So. 793; Gehrkin v. Gehrkin, supra; Wainwright v. Wainwright, supra."
*62 In the more recent case of Rodriguez v. Rodriguez, 245 So.2d 765 (La.App. 4th Cir. 1971), the facts were similar to those in the present case in that there the wife, soon after the judgment awarding her alimony pendente lite, became gainfully employed and agreed to waive the alimony. Nevertheless, in the subsequent divorce proceedings, she sought judgment for the delinquent alimony pendente lite. Citing Pisciotto v. Crucia, supra, the court held:
"Applying the jurisprudence expressed in the foregoing authorities, the only remedy available to Mr. Rodriguez to relieve himself of the obligation imposed by the alimony decree would have been in a proceeding seeking to have the judgment amended, suspended or terminated."
Applying these rules to the present case, the only way Mr. Dauzat could have relieved himself from paying the alimony pendente lite ordered in the separation judgment was by petition to the court for a modification of the judgment. Having failed to file such a proceeding, he is liable for the full alimony awarded by the decree.
We are aware of the recent decision by our Supreme Court in Moga v. Dubroc, 388 So.2d 377 (La.1980). In that case the divorce judgment gave custody of two children, a boy and a girl, to the mother and ordered the father to pay $250 per month in child support. Shortly thereafter, the parents agreed the father would take care of the boy in his own home and reduce his payments to the mother to the sum of $125 for the girl. They complied with this agreement for four years. Then the mother sued the father for delinquent child support in the sum of $4,500 not paid in accordance with the judgment. The trial judge, relying on Halcomb v. Halcomb, 352 So.2d 1013 (La.1977), gave the mother judgment for the unpaid child support. The Court of Appeal reversed, distinguishing Halcomb on the basis that Mrs. Dubroc agreed to the reduction of child support, whereas in Halcomb the father acted unilaterally.
The Supreme Court, affirming the Court of Appeal, stated:

"Halcomb and the cases upon which Halcomb relies (e. g., Pisciotto, supra) rest on a strong policy in the area of child custody judgments to safeguard the sanctity of judgments and the orderly processes of law, and to prevent husbands from invoking `self-help.' It is an effort by the courts to prevent over-reaching by husbands compelled to pay estranged wives support for their children. The cases have interpreted Civil Code Article 232 to require this result, namely, to require parties to resort to the courts for any alteration in a custody decree.
* * * * * *
"The Civil Code nowhere mandates a lawsuit for a change in alimony, and the Code of Civil Procedure merely provides for the proper procedure in seeking arrearages. This Court in Halcomb and earlier in Pisciotto engrafted a jurisprudential rule onto the alimony statutes to the effect that absent a lawsuit to alter an alimony decree the plaintiff in a rule for arrearages would be entitled to the full amount under the prior judgment up to three years prior to the rule."
The Supreme Court in Moga then stresses the duty of the parent to support the child, as distinguished from other types of alimony, and concludes:
"Since the parent's duty of support and upbringing is a legal duty owed to the child, it cannot be renounced or suspended. There is no prohibition, however, expressed by the law against a spouse's agreement to suspend his right to compel the other parent without custody to turn over to him in advance money necessary for the child's maintenance. Of course, an essential prerequisite to such a conventional modification of a parent's right to receive support payments is implied. The parent may not, by suspension of this right, thwart the purpose for which the right is established, i. e., the enforcement of the child's right to support and upbringing.
"For these reasons, an agreement by a parent to suspend his right to receive child support payments will not be enforced *63 unless it meets the requisites for a conventional obligation and fosters the continued support and upbringing of the child. To allow the parent to suspend his right to receive support payments under circumstances contrary to the child's interests, would be inimical to the ultimate goal of support and upbringing of the child. On the other hand, if the parties clearly agree to a suspension of the payments, and such agreement does not interrupt the child's maintenance or upbringing or otherwise work to his detriment, the agreement should be enforceable."
After careful study, we do not find Moga overrules Pisciotto as to alimony payments for support of the wife. The Moga decision appears to be carefully limited to child support agreements entered into by both the mother and the father and which foster the child's maintenance. The court takes note of Pisciotto but does not overrule it except in the limited situation presented. Pisciotto is still controlling in the present case.
Having decided this case under Pisciotto, we do not reach the question of the wife's incapacity to contract prior to divorce.
Mrs. Dauzat, in her answer to this appeal, seeks an increase in the award of back alimony. She claims she is entitled to arrearages from the time of defendants' last payment up until the judgment of divorce was rendered in April of 1980. The district court, adhering to the express provisions of the judgment of separation, awarded past due alimony only up until the time she secured gainful employment as a hairdresser in January of 1979. Thus, he found defendant was required to pay alimony for seven months, and that he had paid for two months, leaving five months, a total of $2,500, past due.
Plaintiff contends she did not earn enough as a hairdresser to support herself, and that she is not now employed. There is some question from the evidence as to how much plaintiff earned and how long she worked. These are factual questions as to which we do not find the trial judge was clearly wrong.
For the reasons assigned, the judgment appealed is affirmed at the cost of defendant-appellant.
AFFIRMED.
SWIFT, J., concurs in the result.