592 So.2d 843 (1991)
Betty Choate HAWKINS, Plaintiff-Appellant,
v.
J. Hus HAWKINS, Defendant-Appellee.
No. 90-623.
Court of Appeal of Louisiana, Third Circuit.
December 18, 1991.
*844 Beard & Cagney, Nanette H. Cagney, Guilbeau & Joy, Thomas E. Guilbeau, Lafayette, for plaintiff/appellant.
Shelton & Legendre, Thomas R. Shelton, Lafayette, for defendant/appellee.
J. Hus Hawkins, in pro. per.
Before DOMENGEAUX, C.J., and GUIDRY and KING, JJ.
GUIDRY, Judge.
Betty Choate Hawkins (hereafter referred to as Betty), plaintiff-appellant, brought a rule against defendant, J. Hus Hawkins (hereafter referred to as Hus), her former husband, to make past due alimony executory and for contempt, attorney's fees and court costs. The parties were divorced by judgment signed June 22, 1981.[1] In that decree, the trial court ordered Hus to pay $3,269.00 per month as permanent alimony to support Betty. In addition, Betty was charged with the responsibility of paying the home mortgage note on the former family home in the amount of $1,218.34 per month. The judgment also enjoined the disposition or encumbrance of the community property owned by the parties. From the years 1982 through 1988, plaintiff filed numerous rules for contempt against defendant because of the defendant's failure to pay alimony as required by the judgment.
In response to the instant rule for arrearages and contempt, the defendant asserted that payments he made to third parties should be credited against his obligation to pay alimony. The parties entered into a stipulation on February 2, 1989, which disposed of the dispute as to the classification of a majority of the third party payments prior to the hearing on the rule. Evidence *845 on the remaining issues was taken at a hearing on the rule on that date. On October 4, 1989, the trial court rendered judgment on this rule making past due alimony executory at the rates of $3,269.00 per month from January, 1982 through November, 1982 and $2,000.00 per month from December, 1982 through January 3, 1989 when the alimony obligation was terminated by court order. The lesser amount attributed to the latter six-year period was based on the determination by the court that the parties had "clearly agreed" to the $2,000.00 amount by oral stipulation entered into in open court by the parties' respective attorneys on November 15, 1982. The court also determined that the net amount of alimony past due and owing was $94,390.29. The trial court granted credits of $45,601.45 for payments made by Hus to third parties during the period in question. This credit included a $6,842.00 direct payment from J. Hus Hawkins to Betty Hawkins. This payment's classification was disputed at trial. Plaintiff claimed that it was her one-half share of proceeds derived from the sale of real estate previously classified as community property. Defendant claimed it was simply a cash alimony payment. The trial court ruled it was alimony and not proceeds from the sale of former community property. The court also determined that in 1984 the defendant made overpayments to plaintiff above and beyond his $24,000.00 per year alimony obligation. The total amount paid in 1984 (including payments to third parties in the amount of $40,992.14) was $87,252.25. Thus, the total amount of overpayments in 1984 was $63,252.25. This amount was subtracted from the net amount of arrearages, $94,390.29, to leave a balance due by the defendant of $31,138.04. The October 4, 1989 judgment does not reflect this balance due, but instead only listed the net amount due for the years 1982-1988 as $94,390.00.
Betty appealed urging that the trial court erred in the following three respects:
1. Determining that the oral stipulation entered into between the parties' attorneys was sufficient to modify the previous divorce judgment as it pertains to the amount of the alimony obligation.
2. Granting certain credits to defendant against his alimony obligation for payments made to third parties.
3. Denying the rule for contempt of court and refusing to award attorney's fees and penalties.
We will consider and dispose of these assignments of error in the order listed.

ASSIGNMENT OF ERROR NO. 1
On November 15, 1982, during a hearing on a rule for contempt, the parties' attorneys entered into a stipulation in open court in which they represented that the parties had agreed to reduce the defendant's alimentary obligation from $3,269.00 per month to $2,000.00 per month. At this hearing, Hus testified that the agreement was satisfactory to him. Betty did not testify and did not personally acknowledge or assent to the stipulation. Presumably, pursuant to this stipulation and the parties' consent thereto, the rule for contempt was settled, however, no formal judgment of dismissal appears in the record. Six years later, in a judgment on a rule for contempt signed on May 24, 1988, the court ordered the defendant "... to continue to pay alimony in the amount of $2,000 per month". This was the first recognition in a judgment that the defendant's obligation was reduced to $2,000.00 per month by the stipulation of November 15, 1982. In the interim between the stipulation on November 15, 1982 and the rendering of this contempt judgment on May 24, 1988, the substance of the stipulation was never incorporated in a judgment. Following trial of the instant rule, the trial court determined that the stipulation was a "clear agreement" between the parties and was sufficient to reduce the amount of monthly alimony due from November 1, 1982 through January 3, 1989 to the sum of $2,000.00 monthly. On appeal, appellant urges that the reduction should be effective only from the date it was first judicially recognized in the judgment signed May 24, 1988.
The issue presented by this assignment of error is whether the alimony obligation contained in the divorce judgment of June *846 22, 1981 could be modified by an oral agreement entered into in open court between attorneys representing the parties.
A judgment for alimony, as to the amount that has become past due, is the property of him in whose favor it has been given, and is protected against alterations or annulment except by the method and for the cause prescribed by law. Townsend v. Townsend, 421 So.2d 969 (La.App. 3rd Cir. 1982), writ denied, 427 So.2d 1211 (La. 1983). The law applicable to this issue is found in a long line of cases beginning with Pisciotto v. Crucia, 224 La. 862, 71 So.2d 226 (1954), in which the wife sued her former husband for past due alimony to which she was entitled pursuant to a divorce judgment. The Supreme Court held that "... a reduction of alimony or a discharge from the obligation to pay may be granted only from and after the time when it is sought, by suit or in answer to a suit to enforce payment". Pisciotto, supra, 71 So.2d at 228, citing La.C.C. art. 232. Under the rule announced in this case, the obligation to pay a certain amount of alimony pursuant to a judgment can only be modified by subsequent court action. The payor spouse is not allowed to unilaterally reduce or terminate the amount of his payments.
In Halcomb v. Halcomb, 352 So.2d 1013 (La.1977), the husband unilaterally reduced child support payments as each of his four children reached the age of majority. In holding that the husband could not modify the "in globo" award without first seeking judicial approval, the court reasoned as follows:
"... an alimony judgment is not final in that a modification, reduction or termination of such a judgment may be sued for. La.Civ.Code art. 160, 232. See also Wright v. Wright, 189 La. 539, 179 So. 866 (1938). In the absence of such a suit, however, the judgment cannot be altered or modified, Cotton v. Wright, 193 La. 520, 190 So. 665 (1939); Williams v. Williams, supra [211 La. 939, 31 So.2d 170 (1947) ], except in certain instances where the award is terminated by operation of law. An example of an automatic revocation of alimony is when an award in favor of a wife is revoked when she remarries. La.Civil Code art. 160.... Support for this rule is found in a proper regard for the integrity of judgments." Halcomb, supra, at 1016.
In Dubroc v. Dubroc, 388 So.2d 377 (La. 1980), the Supreme Court announced an exception to the rule in situations where the parties "clearly agree" to modify the support obligation. Dubroc involved an extrajudicial oral agreement between divorced parents which suspended the mother's right to receive child support payments under a judgment while the father supported and maintained the child in his home. The court distinguished Halcomb as a case involving unilateral action by the husband to reduce child support payments. Conversely, the Dubroc case concerned a mutual agreement in which the wife did more than merely acquiesce in a unilateral reduction or refusal to pay on the part of the husband. The Supreme Court held that, in this situation, the agreement was binding and enforceable.
In Dauzat v. Dauzat, 391 So.2d 60 (La. App. 3rd Cir.1980), this court read the Dubroc holding narrowly in determining that it was carefully worded to limit the "clear agreement" exception to child support obligations. The wife testified at the divorce hearing that she had orally agreed to waive her rights to alimony pendente lite in exchange for the receipt of proceeds of certain certificates of deposit. This agreement was entered into by the parties out of court and without court approval. We reasoned that Dubroc did not overrule Pisciotto as the rule announced in the latter case pertained to the inability of the parties to consensually modify alimony payments for support of the wife. Thus, the husband's obligation to pay alimony pendente lite under a separation judgment could not be altered or modified by an out of court agreement between the parties.
In McDonald v. McDonald, 520 So.2d 1114 (La.App. 3rd Cir.1987), the wife signed a document in which she stipulated to the amount of past due alimony pendente lite and that the obligation of the husband *847 would cease as of the month in which she signed the agreement, February, 1984. Approximately two years later, the wife filed a rule for past due alimony pendente lite that had accrued since February, 1984. At trial of the rule, the defendant husband asserted that his wife was not entitled to the arrearages because of the out of court agreement. In McDonald, this court concluded that such an out of court agreement purporting to terminate or modify alimony pendente lite is unenforceable. This court relied on Dauzat, supra, in noting that it had previously construed the Dubroc "clear agreement" exception to narrowly apply only to consensual modification of child support obligations and not to alimony payable for support of a former spouse.
The case sub judice is clearly distinguishable from Dauzat and McDonald.[2] In this case, the evidence of an agreement between the parties is contained in an oral stipulation entered into in open court by the parties' attorneys. The parties agreed to reduce the defendant's obligation to pay alimony from $3,269.00 to $2,000.00 per month. The substance of that agreement was entered into the record orally by the attorneys. The text of the stipulation appears in the record, in pertinent part, as follows:
"OPEN COURT LAFAYETTE, LOUISIANA NOVEMBER 15, 1982
STIPULATION
THE COURT. Let's go ahead with the stipulation.
MR. SHELTON. [Attorney for defendant] May it please this Honorable Court, with regard to the matters that are fixed for hearing on this particular day, bearing Docket No. 80-2740G, concerning itself with the Rule to Reduce Alimony and the Rule to Make Executory Back Alimony Payments, the parties have stipulated, and do hereby agree and stipulate, that the back alimony will be made executory, up to the date of October 31, 1982. And beginning with the month of November 1st, 1982, that the alimony will be reduced to the sum of two thousand ($2,000.00) dollars per month. That there will be no attachment or executory process that will issue on said funds until after January 1, 1983, and/or at a point of time that the Court can determine that the defendant, J. Hus Hawkins, is no longer proceeding in good faith....
MR. GUILBEAU. [Attorney for plaintiff] That's correct, Your Honor. For the record, Your Honor, it's also stipulated by and between counsel that with respect to the back alimony rule that would have been tried today, specifically, the month [sic] of May, June, July, August, September and October, 1982, have not been paid, in the amounts of three thousand two hundred sixty-nine ($3,269.00) dollars each.
The Defendant in Rule, J. Hus Hawkins, agrees that these amounts are due and owing, as stated by Mr. Shelton.
MR. SHELTON. Your Honor, at this time, we would ask that Mr. Hawkins, who is present in Court, come forward.
(Mr. J. HUS HAWKINS CAME FORWARD.)
MR. SHELTON. Mr. Hawkins, you have heard the terms of the Stipulation, and you have heard the terms of the agreement. Are they satisfactory with you?
MR. HAWKINS. They are.
MR. SHELTON. Thank you very much, Your Honor.
THE COURT. Good luck, gentlemen. I hope you all can resolve this.
STIPULATION ENDED."
Obviously, the court took notice of this stipulation, but it never did sign a judgment positively modifying the original divorce judgment to conform to the stipulation. It is clear from the transcript that the parties intended to settle or compromise the dispute at issue that day by entering into this agreement. Louisiana Civil Code article 3071 specifically addresses this situation. It provides:

*848 "A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form." (Emphasis ours)
The stipulation in this case resulted from a rule to reduce alimony filed by Hus and a rule for arrearages and contempt filed by Betty. According to this article, once entered into in open court, the stipulation became judicially enforceable by either party. The Third Circuit cases cited above, e.g., Dauzat and McDonald, do not apply to this situation since they dealt with the validity and enforceability of out of court agreements purporting to modify alimony obligations payable to a spouse. The agreement in this case is tantamount to a transaction or compromise, and, since it complies with form requirements, is enforceable, assuming that the plaintiff's attorney had authority to enter into the stipulation on his client's behalf.
In this regard, former Civil Code article 2291 (effective at the time the stipulation was entered into but subsequently redesignated as La.C.C. art. 1853 upon enactment of the 1984 Obligations revision) provides as follows:
"The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
It amounts to full proof against him who has made it.
It cannot be divided against him.
It cannot be revoked, unless it be proved to have been made through an error in fact.
It cannot be revoked on a pretense of an error in law."
La.C.C. Art. 2291. (Emphasis ours)
In Singleton v. Bunge Corporation, 364 So.2d 1321 (La.App. 4th Cir.1978), our brethren of the Fourth Circuit interpreted the above statute as follows:
"Ordinarily, a party's counsel of record is assumed to be authorized by his client to engage in settlement negotiations, but he does not have authority to settle his client's claim without his client's "clear and express consent." Van Vleet Mansfield Drug Co. v. Anders, 157 So. 166 (La.App. 2d Cir.1934); Phillips-Jones Corp. v. Caskey, 13 La.App. 675, 127 So. 46 (2d Cir.1930), reh. den., 14 La.App. 26, 128 So. 553 (1930); Phelps v. Preston, 9 La.Ann. 488 (1854). Nor, generally, can an attorney sign a binding settlement agreement on behalf of his client without a written authorization from the client. However, because a client speaks through his attorney in court, any statement made by the attorney is held to be an admission by the client. Under the provisions of C.C. Art. 2291,2 a judicial confession is full proof against the party making it." (Emphasis oursfootnotes omitted)
We subscribe to this interpretation of former La.C.C. art. 2291 and, when read in pari materia with La.C.C. art. 3071, we conclude that the stipulation entered into in open court by the parties' attorneys is a valid and binding compromise and its terms are enforceable.
For these reasons, we conclude that the reduction in alimony from $3,269.00 per month to $2,000.00 per month was effective as of November 15, 1982. As such, the trial court correctly determined that the alimony obligation of defendant was reduced to $2,000.00 per month retroactive to November 1, 1982 through January 3, 1989.

ASSIGNMENT OF ERROR NO. 2
Plaintiff asserts that the trial court erred in granting to the defendant certain credits against his obligation to pay alimony to the plaintiff for payments made to third parties. At issue are the classification of four *849 separate payments made by Hus, three made to third parties and one made to Betty. Specifically, the following payments which were made following termination of the community are contested by the plaintiff as having been wrongfully credited as alimony by the trial court:

Payment Date Payee Amount
 1 1/16/84 Lafayette Building Assoc. $ 8,149.84
 2 7/20/84 Guaranty Bank 26,000.00
 3 7/26/84 Lafayette Building Assoc. 4,136.25
 4 1/27/86 Betty C. Hawkins 6,842.30

During their marriage, the property of Hus and Betty was subject to the legal regime, the community of acquets and gains. La.C.C. art. 2327. Once divorced, the community was terminated retroactive to July 22, 1980. La.C.C. art. 159. A spouse having control of community property at the termination of a community property regime occupies the position of a co-owner under the general law of property. La.C.C. art. 2369, comment (C). The substance of this comment was enacted as La.C.C. art. 2369.1 by Acts 1990, No. 991 in conjunction with Acts 1990, No. 990 which enacted Title VII of Book II, entitled "Ownership In Indivision". Prior to this, only La.C.C. art. 480 addressed the principle of co-ownership. Since this is not a suit to partition community property, we are not concerned with any claims Betty may have to the ownership of income derived from Hus' business after the divorce. We are only concerned with the narrower issue of whether credits were properly granted against Hus' alimony obligation. Any claims Betty may have as to income allegedly co-owned by her should be properly brought in a suit to partition community property.
The defendant was self-employed as a geologist. He had working and production interests in several oil and gas production wells in South Louisiana. This was his source of income both during and after the marriage. During the marriage it is clear that this income was properly classifiable as community property. La.C.C. art. 2338. Accordingly, each spouse owned an undivided one-half interest in the revenues which were earned or accrued during the community's existence. La.C.C. art. 2336. Pursuant to the judgment of divorce, Hus' only obligation directly owed to Betty was to pay the alimony initially in the amount of $3,269.00 and, beginning November 1, 1982, in the amount of $2,000.00. Both parties testified that they contemplated that defendant would pay the alimony out of the oil and gas revenues which he collected after the divorce without regard to any ownership interest plaintiff could later assert in the revenues.
Payments No. 1 and 3.
These two payments of $8,149.84 in 1984 and $4,316.25 in 1986 were made to the Lafayette Building Association (LBA) by Hus to pay the debt on the former community home's mortgage note. When each payment was made, Betty (who was made responsible for paying the note in the judgment of divorce) was delinquent by several months. She claims that her tardiness in meeting this obligation was caused by the defendant's refusal to make timely alimony payments and his constant arrearages. At trial, Hus claimed that the cause of his nonpayment of alimony was the injunction prohibiting the disposition of community property obtained by Betty. It allegedly severely limited his access to bank accounts utilized in his geology business. At any rate, we note, as did the trial court, that the divorce judgment did not specifically make Betty's obligation to pay the house note contingent upon Hus' payment of alimony. Stated another way, the judgment does not obligate Betty to pay the house note out of alimony received by her from Hus. However, from a practical standpoint, it appears from the record that Betty had no other source of income from *850 which to pay the house note. She was not employed nor did she receive any money from an independent source. Thus, the only way she would be able to pay the house note was upon the receipt of Hus' alimony payment.
It is clear that the house note was a community obligation under La.C.C. art. 2360 despite the fact that Betty was made responsible for the entire payment. The trial court granted Hus credit against his alimony obligation for the entire amount he expended on the house note, $12,766.09, relying on Gottsegen v. Gottsegen, 508 So.2d 162 (La.App. 4th Cir.1987). This case involved a similar situation wherein the wife was made responsible for payment of the house note to be paid out of alimony to be received from the husband. Our brethren on the Fourth Circuit granted the defendant husband a credit for the entire amount of the house payments he subsequently made.
Plaintiff claims it would be unfair for this court to allow defendant a credit against his alimony obligation for the house note payments he made since his previous non-payment of alimony caused plaintiff's delinquency on the house note. This assertion may be true, but it does not change the fact that defendant did indeed make the house payments to LBA (fulfilling plaintiff's obligation) when he was only obligated to pay alimony to the plaintiff. Since he paid the house note instead of paying alimony to plaintiff, defendant was correctly granted a credit against his alimony obligation for the total amount of $12,766.09.
Payment No. 2.
This is a $26,000.00 payment to Guaranty Bank of Lafayette for the purchase of a BMW automobile. A promissory note evidencing the indebtedness is dated July 20, 1984. The note is date stamped "PAID" on July 26, 1984. The record reveals that Hus paid for the vehicle for Betty so that she could transport their handicapped son with less difficulty. The note is secured by mortgages on two parcels of real estate in Iberville Parish. Evidence of this security is provided in the record by a collateral pledge agreement signed by Hus only. The $26,000.00 promissory note is signed by both Hus and Betty. Since this note was executed after the termination of the community by judgment of divorce, the respective obligations contained therein are the separate obligations of each party. La.C.C. art. 2363.
The trial court granted Hus a credit for the entire $26,000.00 paid for the car. The plaintiff asserts that, since the money was not paid directly to her and she did not have an unrestricted right to determine how it would be spent, the payment should not qualify as alimony. In support of this rule of law, she cites the case of Davis v. Contorno, 234 So.2d 470 (La.App. 4th Cir. 1970). Apparently, the car was purchased with revenues from oil and gas activity of defendant's business also. The payment definitely benefited Betty and clearly was shown to be a form of support of Betty and her handicapped son. Betty alone determined how the funds were spent; she needed a car, asked Hus to purchase one for her, and personally picked out the model she desired. Under Davis, supra, the $26,000.00 qualifies as alimony despite the fact that the money was not paid directly to Betty in the first instance. The record clearly supports the finding of the trial court that the car was purchased in lieu of the payment of alimony.
Payment No. 4.
Plaintiff contends that this $6,842.30 payment from Hus' personal checking account to Betty was not alimony, but was, in fact, her one-half share of net proceeds of the sale of community real estate known as "Petro Park" to Ross Brupbacher. Defendant asserts that the payment is properly classified as alimony. The record reveals that the total net proceeds from the sale were $14,097.23, onehalf of which is $7,048.61. Plaintiff was unable to explain the $206.31 difference between her one-half share of the net proceeds from the sale and the amount of the payment from Hus to her. Hus testified that upon receipt of the check from the sale made payable to both he and Betty, they both went to the bank and split the *851 proceeds. He could not recall what Betty did with her share, but did state that the entire $14,097.22 was definitely not deposited into his separate checking account. He did not pay Betty her share of the proceeds out of his checking account. Betty testified that she assumed the $6,842.30 payment was from her share of the sale of the real estate. The trial court determined otherwise, reasoning that Hus' uncontradicted testimony was sufficient to grant a credit for the entire amount.
The burden of proving a set-off against alimony or support payments is on the party asserting the set-off. Vallaire v. Vallaire, 433 So.2d 315 (La.App. 1st Cir. 1983); Lynch v. Lynch, 422 So.2d 703 (La. App. 3rd Cir.1982). Additionally, the trial judge is given great discretion in either granting or modifying awards of alimony and child support. His judgment will not be set aside or amended unless a clear abuse of discretion is shown. McCloud v. McCloud, 544 So.2d 764 (La.App. 3rd Cir. 1989); Daigre v. Daigre, 527 So.2d 9 (La. App. 3rd Cir.1988). Hus testified as to the separate nature of the real estate transaction and his payment to Betty. He pointed out the difference in the amount of her share of the proceeds and the actual payment to her from his personal checking account. Betty stated that she had limited knowledge of the financial dealings of her marriage and assumed that the $6,842.30 payment was for her share of the real estate sale proceeds. Based on this, we cannot say that the trial judge clearly abused his discretion in classifying the $6,842.30 payment (listed as $6,842.00 in the judgment) from Hus to Betty as alimony. As such, we hold that the credit of $6,842.30 against Hus' alimony obligation was correctly granted.

ASSIGNMENT OF ERROR NO. 3
Plaintiff asserts the trial court erred in not finding the defendant to be in contempt and in not awarding plaintiff attorney's fees incurred in the prosecution of this rule. The trial court held that defendant showed good cause for nonpayment: confusion over the amount owed, a belief that he had substantially overpaid at times, the effect of the injunction prohibiting disbursement of community funds, and the cyclical, fluctuating nature of the oil industry. Plaintiff asserts that these reasons do not constitute good cause.
La.C.C.P. art. 224 provides in pertinent part:
"Any of the following acts constitutes a constructive contempt of court:
. . . . .
(2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court; ..."
Under our jurisprudence interpreting this statute, it must be shown by the party seeking the contempt ruling that the alleged offender wilfully disobeyed a direct order of the court prior to the contempt rule; otherwise, he should not be held in contempt. James v. Spears, 372 So.2d 617 (La.App. 1st Cir.1979); Lambert v. Adams, 347 So.2d 883 (La.App. 3rd Cir.1977). We find that the record evidences a reasonable basis for the trial court's ruling that the defendant was not in contempt for nonpayment of alimony. That finding is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Former La.R.S. 9:305, effective at the time of the filing of the rule at issue (subsequently repealed and redesignated as La.R.S. 9:375 by Acts 1990, no. 1009 effective January 1, 1991), provides, in pertinent part:
"When the court renders judgment in an action to make past due alimony or child support executory, ... except for good cause, the court shall award attorney fees and costs to the prevailing party." (Emphasis ours)
The court found good cause shown by defendant for the reasons heretofore mentioned. The trial court is vested with discretion in determining whether attorney's fees should be awarded when it renders executory a judgment incorporating alimony arrearages. Gottsegen v. Gottsegen, supra; Foster v. Foster, 499 So.2d 641 (La. App. 3rd Cir.1986); Hilbun v. Hilbun, 498 So.2d 1127 (La.App. 3rd Cir.1986). We find *852 that the trial judge abused his discretion in not awarding attorney's fees to plaintiff under the facts of this case. The reasons relied upon by the trial court are not sufficient to constitute "good cause" when one considers that Hus' net arrearages exceeded $30,000.00. No amount of confusion or misunderstanding can substantiate such a gross underpayment of alimony. In addition, the record reveals that the injunction was lifted for the limited purpose of allowing payment of alimony and personal living expenses. Clearly, "good cause" for nonpayment was not shown. Accordingly, we will award attorney's fees in favor of plaintiff and against defendant in the amount of $5,000.00.

CONCLUSION
For the above and foregoing reasons, we amend the judgment of the trial court to award plaintiff, Betty Choate Hawkins, the sum of $5,000.00 as attorney's fees. In all other respects the judgment of the trial court is affirmed. All costs of this appeal are to be borne one-half (½) by plaintiffappellant, Betty C. Hawkins, and one-half (½) by defendant-appellee, J. Hus Hawkins.
AFFIRMED AS AMENDED.
NOTES
[1] Betty originally filed a petition for separation from bed and board on July 2, 1980, which suit bears docket No. 80-2740-K of the Fifteenth Judicial District Court. By answer and reconventional demand filed on July 22, 1980, Hus requested a judgment of absolute divorce based on the allegation that the parties had been living separate and apart for a period of more than one year. On March 13, 1981, Hus filed a separate petition for divorce based on the same grounds as those asserted in his reconventional demand. This separate suit bears docket No. 81-1122-F of the Fifteenth Judicial District Court. The suits were consolidated and the same judgment on rule was rendered and filed in each. The suits remain consolidated on appeal, bearing our docket numbers 90-623 and 90-626, respectively. The singular judgment rendered in both cases is the subject of this appeal. In reality, only one rule based on one judgment is considered in this opinion, the result of which is also reflected in a separate decree in case No. 90-626.
[2] The author of this opinion did not participate in the decisions in Dauzat and McDonald. Since this case is factually distinguishable from the cited cases, I neither consider nor express agreement or disagreement with the holdings thereof.