626 So.2d 578 (1993)
Rhonda HILDEBRAND, Plaintiff-Appellee,
v.
Roy D. HILDEBRAND, Defendant-Appellant.
No. 93-261.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1993.
John Quitman Davis, for Rhonda Hildebrand.
*579 John William Pickett, for Roy D. Hildebrand.
Before DOMENGEAUX, C.J., and LABORDE and COOKS, JJ.
DOMENGEAUX, Chief Judge.
Roy D. Hildebrand appeals from a trial court judgment reducing his previously ordered child support payments from $706.00 to $600.00 per month. His appeal concerns the trial court's deviation from the child support guidelines, La.R.S. 9:315 et seq. Roy's former wife, Rhonda Hildebrand, answered the appeal, alleging that no reduction should have been granted, and that Roy should have been held in contempt and ordered to pay attorney's fees. After reviewing the record before us, we remand this matter to the trial court.
Roy and Rhonda Hildebrand were divorced in 1991. Joint custody of the two minor children was awarded, and Rhonda was named the domiciliary parent. Roy was ordered to pay child support in the amount of $706.00, which was the amount awarded by consent judgment at the time of the parties' separation in 1990.
Roy filed this rule to reduce child support in 1992, alleging that because of a change in his financial circumstances, he was no longer able to pay $706.00 per month. Rhonda answered Roy's allegations and filed a rule for contempt, arrearages, and attorney's fees against Roy.
The hearing of this matter revealed the following facts. The parties were married in 1975 and had two children. At the time of the instant hearing, their son was 12 years old and their daughter was nine years old. Rhonda lives with the children in Kilgore, Texas next door to her parents. She lives rent free in a trailer located on land owned by her parents, who also provide free child care as needed. Rhonda works one night per week at a race track, but the record does not indicate how much she earns at this job.
Rhonda attends a community college in Kilgore and is studying a pre-nursing curriculum. She receives a government grant for this endeavor and takes approximately six to ten hours per semester. Rhonda testified that although she has worked in the past, she now lives off of the child support payments of $700.00 per month provided by Roy.
At the time of their divorce, Roy was working offshore as a driller on a drilling rig. He testified that from 1989 through 1991, he earned well over $3,000.00 per month. During this time, he paid $700.00 in child support rather than the $706.00 he had been ordered to pay. In 1992, Roy voluntarily gave up his high paying position for a job that paid less, but was closer to home and would provide greater stability in the future. As a result of the decrease in his income, Roy filed this rule for a reduction in child support, and, prior to a judicial determination and without Rhonda's consent, he reduced his support payments to approximately $350.00, upon the advice of his counsel. In this appeal, Roy contends that his support payments should have been reduced to $457.34.
Rhonda opposed Roy's rule for reduction and sought arrearages, attorney's fees, and a contempt judgment against him. The trial judge reduced Roy's support obligation to $600.00 per month. Although Roy was ordered to pay $1,369.69 in arrearages, he was not found in contempt, nor was he ordered to pay attorney's fees.
In this appeal, both Roy and Rhonda argue that the other's earning potential should be considered in the calculation of child support to be provided by each party. Roy contends that Rhonda is voluntarily unemployed within the meaning of La.R.S. 9:315.9 and is capable of working full time at $5.00 per hour. Rhonda contends that Roy was not justified in quitting his $37,000.00 per year job and is therefore voluntarily underemployed. Roy suggests that Rhonda's earning potential of $5.00 per hour must be used to calculate his share of child support in compliance with La.R.S. 9:315.2. Conversely, Rhonda contends that Roy's voluntary underemployment negates his proof of a change in circumstances and thereby warrants no reduction in the previously ordered support payments of $706.00 per month.
The trial court's reasons seem to indicate that neither Roy nor Rhonda is voluntarily unemployed or underemployed. However, *580 solely because of Rhonda's "educational requirements," the trial judge concluded that the child support guidelines do not apply to this case. He wrote:
Mr. Hildebrand changed employment voluntarily but not void of some valid future considerations. By her own admissions, Ms. Hildebrand is not employed and is in fact living solely off the child support provided by Mr. Hildebrand. To her credit, however, she is concentrating on a curriculum of study that will ultimately provide a better standard of living for her and the two minor children. This endeavor will also ultimately benefit Mr. Hildebrand.
It seems illogical to force Ms. Hildebrand back into the workplace at a time when she is progressing in her field of study. It seems equally illogical to force Mr. Hildebrand into a workplace where instability and employment security are factors.
Mr. Hildebrand is entitled to a reduction. However, Ms. Hildebrand's education and future benefit to the children, as well as Mr. Hildebrand, must be considered. This court finds that in view of the educational requirements and the dedicated effort on behalf of Ms. Hildebrand, the child support guidelines are not governing.
The trial judge then picked an arbitrary figure of $600.00 per month and ordered Roy to pay that amount in child support.
The trial judge deviated from the guidelines but, in doing so, did not comply with La.R.S. 9:315.1(B) which provides:
B. The court may deviate from the guidelines set forth in this Part if their application would not be in the best interest of the child or would be inequitable to the parties. The court shall give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines. The reasons shall be made part of the record of the proceedings.
The statute then gives a list of factors the court may consider in determining when to deviate from the guidelines.
The guidelines are mandatory and apply to any action to establish or modify support filed on or after October 1, 1989. A trial court's factual findings cannot render the guidelines inapplicable, although some factual findings may warrant a deviation from the guidelines.
In this case, the trial court erred in finding the guidelines inapplicable. The trial court should have considered the guidelines and given in his reasons the evidentiary basis supporting any deviation from the guidelines. See Miller v. Miller, 610 So.2d 183 (La.App. 3d Cir.1992).
In the Miller case, this court reviewed a trial court's decision to deviate from the guidelines. We explained the guidelines as follows:
LSA-R.S. 9:315.1 creates a rebuttable presumption that the amount calculated under the guidelines is the proper amount of a child support award. LSA-R.S. 9:315.1(B) allows the trial court to deviate from the guidelines if their application would not be in the best interest of the child or would be inequitable to the parties. A downward deviation requires a showing that application of the guidelines would be inequitable to the parties as such a downward deviation would obviously not be in the best interest of the child. Montgomery v. Waller, 571 So.2d 765, 768 (La.App. 2nd Cir. 1990). Section (C) recognizes the court's discretion to consider various obligations in deviating from the guidelines. Specifically, subsection (2) provides that the court may consider "[t]he legal obligation of a party to support dependents who are not the subject of the action before the court and who are in that party's household." If the court deviates from the guidelines, it must, in accordance with section (B), give oral or written reasons for the deviation on the record.
The act requires the parties to provide the court with documentation evidencing their respective adjusted gross incomes. The court utilizes the schedule in LSA-R.S. 9:315.14 to determine the basic child *581 support obligation based on the combined adjusted gross incomes of the parties and the number of children. LSA-R.S. 9:315.2. The total child support obligation is determined by adding together the basic child support obligation amount, the net child care costs, the cost of health insurance premiums, extraordinary medical expenses, and other extraordinary expenses. LSA-R.S. 9:315.8. The court is required to use a worksheet such as the one shown in LSA-R.S. 9:315.8 [now R.S. 3:315.15] to determine the parties' respective child support obligations.
Miller, 610 So.2d at 184-185.
We concluded in Miller that the trial court erred in its downward deviation from the guidelines because there was no evidence to suggest that adherence to the basic support schedule would have been inequitable to the parties. With sufficient evidence in the record, we were able to calculate the appropriate amount of child support to be paid, and we rendered judgment accordingly.
Similarly, in Guillory v. Ventre, 610 So.2d 1056 (La.App. 3d Cir.1992), writ denied, 613 So.2d 992 (La.1993), we concluded the trial court erred in its calculation of child support based on "flawed income data." Again, because the record contained the appropriate evidence, we were able to calculate the correct amount to be paid as child support.
In the instant case, we are unable to calculate the proper support obligation. The record contains no evidence of Rhonda's income from her job at the race track; further, only oral testimony of Roy's current hourly wage is provided. Therefore, we must remand this matter for recalculation of Roy's support obligation. On remand, the parties must comply with La.R.S. 9:315.2 which requires the submission of verified income statements. Likewise, the trial judge must consider the voluntariness of both Roy and Rhonda's employment status in light of La. R.S. 9:315.9, and relevant jurisprudence, such as Mayo v. Crazovich, 621 So.2d 120 (La. App. 2d Cir.1993); McHale v. McHale, 612 So.2d 969 (La.App. 2d Cir.1993); Jones v. Jones, 612 So.2d 240 (La.App. 4th Cir.1992); Mitchell v. Mitchell, 610 So.2d 1114 (La.App. 5th Cir.1992); Palacios v. Palacios, 608 So.2d 243 (La.App. 5th Cir.1992), writ denied, 613 So.2d 1000 (La.1993); Massingill v. Massingill, 564 So.2d 770 (La.App. 2d Cir.1990); and Gravel v. Gravel, 331 So.2d 580 (La.App. 3d Cir.1976). It is up to the trial judge to determine if Roy's employment ambitions and Rhonda's educational pursuits warrant deviation from La.R.S. 9:315.9.
In essence, the child support guidelines must be applied to this case, and, after the appropriate calculations are made (as described in La.R.S. 9:315.8 and shown in the worksheet at La.R.S. 9:315.15), if a deviation is warranted, the trial judge must state for the record the reasons for the deviation. As we stated in Lanclos v. Lanclos, 614 So.2d 170 (La.App. 3d Cir.1993):
Although we find that the trial court erred in this case, we do not hold that a trial court has no discretion in setting child support awards. The act provides for guidelines, and not rigid adherence. The trial court's judicial discretion should be protected in order to prevent inequities. The intended purpose of the guidelines is to provide consistency and certainty in child support awards. In order to serve that purpose, an evidentiary basis for deviation must be properly presented and, if accepted by the trial court, the reasons for deviation must be clearly stated.
Lanclos, 614 So.2d at 175.
We turn now to the remaining issues raised by Rhonda in her answer to Roy's appeal. Rhonda has alleged as error the trial court's failure to award attorney's fees under La.R.S. 9:375, and its refusal to hold Roy in contempt for arrearages.
In addressing these issues, we turn to the case of Hawkins v. Hawkins, 592 So.2d 843 (La.App. 3d Cir.1991). In Hawkins, we reiterated the longstanding rule that a payor spouse is not allowed to unilaterally reduce or terminate support payments; rather, a judgment of support may be modified or terminated only by operation of law or subsequent court action. The plaintiff sued her former husband for past due alimony, a finding of contempt under La.C.C.P. Art. 224, and attorney's fees and costs pursuant to La.R.S. 9:305, now La.R.S. 9:375. The trial court awarded the arrearages but refused to hold the defendant in contempt or award attorney's fees and costs.
*582 On the contempt issue in Hawkins, we held that the plaintiff had the burden of proving that "the alleged offender willfully disobeyed a direct order of the court prior to the contempt rule." We affirmed the trial court's finding that the defendant had "good cause" for failing to make certain payments, such that he did not willfully disobey a court order. Conversely, we found that the same "good cause" reasons, i.e., confusion and misunderstanding, were not sufficient to defeat the mandatory award of attorney's fees and costs under La.R.S. 9:305.
In the case sub judice, Roy Hildebrand offered no explanation as to why he paid $700.00 per month instead of $706.00 ordered at the time of separation. He also offered no explanation, other than bad legal advice, as to why he later reduced his payments to approximately $350.00 (when he admits now that he owes at least $457.34). Accordingly, on remand, the trial court is instructed to reconsider the issues of contempt, attorney's fees, and costs in light of pertinent statutory and jurisprudential guidelines.
For the foregoing reasons, this matter is remanded to the trial court for recalculation of Roy Hildebrand's child support obligation, in addition to the other instructions set out in the above paragraph. Costs of this appeal are assessed equally to both parties.
MATTER REMANDED.