701 So.2d 480 (1997)
Dolores Danos Alagdon, Wife of/and Frank Aquilino ALAGDON
v.
Hiram Winston GUERTIN.
No. 97-CA-0235.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 1997.
Order Remanding Case on Rehearing October 1, 1997.
Writ Denied December 12, 1997.
*481 Nunzio S. Cusimano, Jr., Chalmette, for Plaintiffs/Appellees.
Leslie A. Bonin, New Orleans, for Defendant/Appellant.
Before CIACCIO, LOBRANO and PLOTKIN, JJ.
PLOTKIN, Judge.
The sole legal issue presented by this appeal is whether a consent agreement which has been read into the record is a valid judgment for purposes of holding one of the parties in constructive contempt of court under the provisions of La. C.C.P. art. 224, despite the fact the agreement has not been reduced to a written judgment. We hold that such an agreement is valid and that parties to the agreement can be held in constructive contempt of court for violating such an agreement. Nevertheless, we affirm the trial court judgment, finding that the appellant's allegations, even assuming they are true, are insufficient to support a contempt judgment.

Facts
This appeal arises from a consent judgment on a Petition to Establish Grandparent Visitation Rights between defendant, Hiram Winston Guertin, and plaintiffs, Delores and Frank Aquilino Alagdon, the grandparents of Hiram Guertin's children by the Alagdon's late daughter. After the filing of the petition, the parties, who have experienced a lot of conflict in the past, entered a consent judgment, which was read into the court record on July 12, 1996. The Alagdons orally agreed to all of the stipulations in the agreement and stated that they knew the agreement was a judgment. At the end of the hearing, the trial judge said that if a judgment was prepared, he would "sign same."
Mr. Guertin's counsel prepared a judgment, which unquestionably tracks the language of the provisions of the consent agreement. However, the Alagdons refused to sign the judgment because they allegedly disagreed with some of the provisions. In the meantime, Mr. Guertin claims that Ms. Alagdon violated one of the provisions of the agreement by coming to pick up the children for visitation. Accordingly, Mr. Guertin filed a "Rule to Compel Signing of Stipulation, For Contempt, Attorney's Fees and Costs" against the Alagdons.
The rule was heard on October 18, 1996. At that time, the parties modified the agreement entered on July 12, 1996 to clarify some of the visitation provisions. The trial court took the rule to compel the signing of the stipulation under advisement, then denied the rule for contempt, attorney's fees and costs. In his reasons for judgment, the trial court gave two reasons for denying the rule: (1) the "consent agreement" was not a "consent judgment" punishable by contempt because it was not a final judgment until it had been signed, and (2) the agreement did not prohibit Ms. Alagdon from being present when her husband picked up and dropped off the children and from picking up the children herself.
Mr. Guertin appealed the denial of the rule for contempt, attorney's fees and costs.

Effect of the consent agreement
In setting out the provisions of the consent agreement in open court, counsel for Mr. Guertin made the following statement:
Mr. Frank Alagdon shall pick up and drop off the minor children for all visitation periods and he will contact Mr. Guertin for any request for any additional visitations.
*482 La. C.C.P. art. 224 defines a "constructive contempt of court" as "any contempt other than a direct one," and lists ten specific acts which constitute a constructive contempt of court. "Wilful disobedience of any lawful judgment, order, mandate, writ or process of the court" is second on that list. Mr. Guertin claims that Ms. Alagdon wilfully violated the above provision of the court's order when she, rather than Mr. Alagdon, came to his home to pick up the children for visitation. Mr. Guertin claims that the purpose of including the above provision was to prevent him from dealing with Ms. Alagdon, in consideration of the enormous amount of friction between the two. One of the trial judge's reasons for denying the rule for contempt was his finding that the "consent agreement" was not a "consent judgment" because it had not been reduced to writing.
This court has previously held that a domestic consent agreement read in open court and "reduced to judgment" was valid and binding on the parties to the agreement. Adams v. Adams, 529 So.2d 877 (La.App. 4th Cir.), writ denied, 533 So.2d 363 (La.1988). In the Adams case, the wife sought permanent alimony despite a provision in the consent agreement prohibiting her from seeking such alimony; she claimed that the agreement was invalid because her former husband had failed to sign an Act of Settlement of Community, a necessary act to effectuate his part of the agreement. We granted an exception of no cause of action in favor of the husband, finding that "legally confected in-court judicial settlements are binding." Id. at 879. See also Hawkins v. Hawkins, 592 So.2d 843 (La.App. 3d Cir.1991).
Like the Adams and Hawkins cases, the instant controversy is controlled by the provisions of La. C.C. arts. 3071 and 3078, which provide as follows:
La. C.C. art. 3071:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their difference by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
(Italics in original; bold face emphasis added.)
La. C.C. art. 3078:
Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected.
La. C.C. art. 3071 is clearcompromise agreements entered between parties to a controversy and recited in open court are valid. In fact, such an agreement "confers upon each [party] the right of judicially enforcing its performance." Thus, the trial court's holding that the judgment in this case was not valid because it had not been reduced to writing was in error. Once a consent agreement has been read into the record, it becomes a legal judgment, even if the agreement is not reduced to writing. Hawkins, 592 So.2d at 847. As a final, valid judgment, such an agreement may be punished by contempt.

Constructive contempt of court
The trial court's second reason for denying the motion for contempt was that the judgment did not prohibit Ms. Alagdon from picking up the children for visitation, as Mr. Guertin alleges. The consent agreement simply says that Mr. Alagdon "shall pick up and drop off" the children; the agreement does not address Ms. Alagdon's rights at all. Certainly the judgment read into court does not prohibit Ms. Alagdon from picking up the children.
However, Mr. Guertin claims that the parties understood that the purpose of the provision was to prevent contact between him and his former mother-in-law. In his original brief to this court, Mr. Guertin asks this *483 court to enter a contempt judgment against Ms. Alagdon; however, in his reply brief, he requests that this court find that the trial court was incorrect in its judgment that no final judgment existed and remand for evidence on whether Ms. Alagdon violated the agreement between the parties.
A trial court is vested with great discretion to determine whether circumstances warrant holding a party in constructive contempt of court under La. C.C.P. art. 224 for wilful disobedience to a court order. Kirby v. Kirby, 579 So.2d 508, 519 (La.App. 4th Cir.), writ denied, 582 So.2d 1308 (La. 1991). Moreover, a trial court must find that the party's violation was "wilful" in order to hold that party in contempt, meaning that the party must have "intentionally, knowingly and purposely acted or failed to act." Riley v. Pennix, 442 So.2d 563, 565 (La.App. 1st Cir.1983). Moreover, a court may not hold a party in contempt unless it finds that the party's reasons for violating the order were without "justifiable excuse." See Kirby, 579 So.2d 508.
Under the circumstances of the instant case, we see no reason to remand the case to the trial court to hold a hearing on the contempt issue. As noted above, the actions allegedly taken by Ms. Alagdon, even if they are true, do not violate the express provisions of the consent judgment. Thus, we find no abuse of the trial court's great discretion in denying the rule for contempt.

Conclusion
Accordingly, the trial court judgment denying the rule for contempt is affirmed.
AFFIRMED.

ON APPLICATION FOR REHEARING
PER CURIAM.
Movant Hiram Winston Guertin has filed an application for rehearing contesting this court's denial of his request for remand for a hearing on the rule for contempt he filed against Delores Danos and Frank Aquilino Alagdon (hereinafter "the Alagdons"). The trial court denied his rule for contempt, finding that the consent judgment entered between the parties in open court was not a final judgment which could form the subject of a contempt because the Alagdons had not signed the written judgment. Moreover, the trial court found that the Alagdons did not violate the consent agreement when Mrs. Alagdon picked up the children for visitation.
In its original opinion, this court reversed the trial court's finding that the consent agreement was not a final judgment and found that a consent agreement is a final judgment if it has been read into the official court record, even if the judgment has not been signed by the parties. However, this court denied Mr. Guertin's request that we remand the case for a hearing on the rule for contempt, agreeing with the trial court's finding that the Alagdons did not violate the consent agreement when Mrs. Alagdon picked up the children for visitation.
In his application for rehearing, Mr. Guertin noted that his original rule for contempt was based on three different alleged violations of the consent agreement by the Alagdons. In addition to his allegation that Ms. Alagdon violated the agreement by picking up the children, he claims that the Alagdons failed to take the children to church as stipulated and that they attempted to make visitation arrangements through the children, both of which are specifically prohibited by the consent agreement. Obviously, Mr. Guertin would be entitled to a judgment of contempt if he can prove either of those allegations. The trial court did not address those two arguments; moreover, Mr. Guertin did not specifically brief those arguments to this court. Nevertheless, in light of the fact that the additional allegations were argued in his rule for contempt, coupled with the fact that he was never afforded a hearing on the issue, we now reverse our decision denying his request for remand. Accordingly, the case is hereby remanded to the trial court for a hearing on Mr. Guertin's rule for contempt.