900 So.2d 1031 (2005)
Dorothy LANG, Spouse of/and Stanley Lang, Erma Martin, Spouse of/and Burnia Martin, Mary Melancon, Individually and as Surviving Spouse of Roy Melancon, Elizabeth J. Penny, Spouse of/and Thomas D. Penny, Elizabeth Romano, Spouse of/and Russell Romano
v.
ASTEN, INC., Combustion Engineering, Inc., D.B. Riley, Inc., Eagle, Inc., Industrial Holdings Corporation, McCarty Corporation, Midland-Ross Corporation, Mt. Vernon Mills, Inc., Owens-Illinois, Inc., Scapa Dryers, Inc., Scapa Group, Ltd., et al.
No. 2004-CA-1665.
Court of Appeal of Louisiana, Fourth Circuit.
March 30, 2005.
*1033 Samuel M. Rosamond, III, Thomas W. Aycock, Crawford Lewis, PLLC, and Daniel J. Caruso, Frank J. Peragine, James A. Burton, Susan M. Caruso, J. Thomas Hamrick, Jr., Simon Peragine Smith & Redfearn, LLP, New Orleans, LA, for Appellant.
Stephen H. Kupperman, Edward R. Wicker, Jr., Barrasso Usdin Kupperman Freeman & Sarver, LLC., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge JAMES F. McKAY, III, Judge DENNIS R. BAGNERIS, SR., and Judge DAVID S. GORBATY).
DENNIS R. BAGNERIS, SR., Judge.
The third party defendants/appellants, OneBeacon America Insurance Company and American Employers Insurance Company, appeal the judgment of the district court granting partial summary judgment in favor of the appellee, Eagle, Inc. The judgment also holds the appellants in constructive contempt of court for failure to provide Eagle, Inc., a full and complete defense. We affirm.

Procedural History
Eagle, Inc. (Eagle) is the defendant in thousands of asbestos suits that allege bodily injury from Eagle's sale and installation of asbestos containing products. More specifically, the plaintiffs in the instant matter allege exposure to asbestos while working at a paper mill in Bogalusa, Louisiana. There are five plaintiffs in the suit alleging exposure to asbestos from 1948 to 2000. Eagle filed a third-party action against the appellants as its insurers. Eagle claims that the appellants are obligated under its liability insurance policy not only to defend Eagle, but to indemnify Eagle if cast in judgment.
Eagle moved for partial summary judgment arguing that the appellants were to provide a complete defense to Eagle. In a Judgment dated March 26, 2004, partial summary judgment was granted in favor of Eagle. The district court held that Eagle had sufficiently proven the existence of certain insurance policies issued to it by *1034 the appellants and that the appellants had "the duty to provide a full and complete defense to Eagle in any matter where exposure to asbestos is alleged to have occurred during any policy period;" that the insurance policies were not exhausted; and that the appellants made certain improper allocations and acted in bad faith.
Later, Eagle motioned the district court to have the partial summary judgment designated as final, at the same time the appellants moved for a new trial on the partial summary judgment. On April 16, 2004, the district court orally declared Eagle's motion as premature but indicated that the appellants must provide a defense for Eagle until the appellant's Motion for New Trial was considered.
In another Judgment dated May 26, 2004, the district court granted in part the appellants Motion for New Trial only to amend the March 26, 2004 Judgment in regards to liability coverage; denied Eagle's motion to designate the partial summary judgment as final; and found the appellants to be constructive contempt of court. In a subsequent judgment dated June 24, 2004, relating back to the original judgment, the appellants were granted a suspensive appeal and the district court designated the partial summary judgment (as amended by the May 26, 2004 judgment) as final. This timely appeal follows.

Assignments of Error
The appellants seek this court's review of the following six (6) assignments of error[1]: (1) that the district court erred in determining on a Motion for Partial Summary Judgment that unauthorized certificates of insurance are sufficient evidence of coverage under liability policies only allegedly issued to Eagle by the American Employers Insurance Company; (2) that the district court erred in imposing on the American Employers an unqualified "duty to provide a full and complete defense in any matter exposure to asbestos is alleged to have occurred during any policy period"; (3) that the district court erred in imposing on OneBeacon America Insurance Company an unqualified "duty to provide a full and complete defense in any matter exposure to asbestos is alleged to have occurred during any policy period"; (4) that the district court erred in granting partial summary judgment in favor of Eagle holding that the insurance policies issued by OneBeacon were not exhausted and that OneBeacon made improper allocations; (5) that the district court erred in holding that the Appellants acted in bad faith; and (6) that the district court erred in holding the appellants in constructive contempt for allegedly failing to provide a defense pending the appellants' Motion for New Trial on Eagle's Motion for Partial Summary Judgment.
We find that there are only two assignments of error which should be addressed, (1) whether the district court erred in granting partial summary judgment in favor of Eagle, and (2) whether the district court erred in finding the appellants in constructive contempt of court.

Standard of Review
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action and shall be construed to accomplish these ends. Petti v. Ordon, XXXX-XXXX (La.App. *1035 4 Cir. 11/10/04), 888 So.2d 1064 citing King v. Parish National Bank, XXXX-XXXX, p. 7 (La. 10/19/04), 885 So.2d 540, 545 (quoting La. C.C.P. art. 966(A)(2)). Appellate courts review grants of summary judgment de novo using the same standard applied by the trial court in deciding the motion for summary judgment. Schmidt v. Chevez, 2000-2456, p. 4 (La.App. 4 Cir. 1/10/01), 778 So.2d 668, 670. According to this standard, a summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Schmidt, 2000-2456 at p. 3, 778 So.2d at 670. The party seeking the summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact. Thomas v. North 40 Land Development, Inc., XXXX-XXXX (La.App. 4 Cir. 1/26/05), 894 So.2d 1160. A fact is "material" if its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Schmidt, 2000-2456 at p. 3, 778 So.2d at 670 (citing Moyles v. Cruz, 96-0307 (La.App. 4 Cir. 10/16/96), 682 So.2d 326). Simply stated, a "material" fact is "one that would matter on the trial on the merits." Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. Because relators will not bear the burden of proof at trial, it is not necessary that they negate all elements of the plaintiff's claims. Rather, relators need only point out to the court the absence of factual support for one or more elements essential to the plaintiff's claims. Once the movants meet this initial burden, the burden shifts to the plaintiffs to present factual support sufficient to establish their ability to satisfy the evidentiary burden at trial. If plaintiffs then fail to satisfy this burden, there is no genuine issue of material fact and the movers are entitled to summary judgment. Thomas, XXXX-XXXX at p. 12, 894 So.2d at 1168. The opponent to a properly supported motion for summary judgment may not rest on the mere allegations or denials of his or her pleadings, but must respond by affidavits or as otherwise provided by law setting forth specific facts showing that there exists a genuine issue of material fact for trial. Coates v. Anco Insulations, Inc., XXXX-XXXX, p. 5 (La.App. 4 Cir. 3/21/01), 786 So.2d 749, 753. "Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponent's favor." Thomas, XXXX-XXXX at p. 13, 894 So.2d at 1169. Stated otherwise, any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. Barbarin v. Dudley, XXXX-XXXX, p. 6 (La.App. 4 Cir. 12/20/00), 775 So.2d 657, 660. Only when reasonable minds must inevitably conclude that the mover is entitled to summary judgment as a matter of law on the facts before the court is a summary judgment awarded. Thomas, XXXX-XXXX at p. 13, 894 So.2d at 1169.

Assignment of Error # 1

Legal Analysis
In the instant case, the appellants argue that Eagle can only be cast in judgment for damages for which OneBeacon and American Employers could possibly be found secondarily liable. The appellants rely on the language in Howard v. Baker Heritage Hosiery, 96-335 (La.App. 5th Cir. 10/1/96), 683 So.2d 827, holding that a third-party defendant is only liable to third-party plaintiff if the third party-plaintiff is cast in judgment.
*1036 Specifically, as it refers to American Employers, the appellants assert that Eagle introduced unauthenticated certificates of insurance as evidence of coverage. The appellants rely on Barber v. Best, 394 So.2d 779 (La.App. 4th Cir. 1981), wherein the court concluded that any party asserting that an insurance company provides coverage has the burden to prove the existence of the policy sued on, its terms and conditions, and that the claim is within the policy's coverage. The appellants assert that Eagle failed to prove its burden as to American Employers.
Eagle argues that it produced certificates of insurance establishing that it maintained general liability, contractual bodily injury, public liability, and protective public liability insurance through American Employers between 1959 and 1968 and that American Employers simply refused to acknowledge any policies or coverage.
The record indicates that the parties do not dispute that the actual insurance policies were issued approximately 45 years ago and are now lost or otherwise unavailable; neither party has been able to locate the policies.
In Hoerner v. Anco, 2000-2333 (La.App. 4 Cir. 1/23/02), 812 So.2d 45 at 71-72, which was appealed on liability issues after the district court awarded the plaintiff monetary damages for exposure to asbestos, we concluded in pertinent part that:
Generally under Louisiana law, the "best evidence" rule requires that originals be produced, absent proof that they could not be located following a diligent effort. Community Bank of Lafourche v. Motel Management Corp. of Louisiana, Inc., 558 So.2d 641, 644 (La.App. 1 Cir.1990). Thus, the best evidence rule generally would require the introduction of the insurance policies themselves in the instant case. However, Louisiana courts apply the best-evidence rule "sensibly and with reason," and grant a trial court broad discretion in determining the admissibility of evidence. Abadie, 00-344, 784 So.2d 46, 74. Thus, courts do not require that an original document be produced under certain limited circumstances, provided the party seeking to have the parole evidence admitted fulfill certain requirements, as outlined below.
First, a third-party seeking to prove the existence of insurance covering the liability of another party ... has the burden of proving by a preponderance of the evidence that the instrument is either lost or otherwise unavailable ... Second, the third-party also bears the general burden to show due diligence in its attempt to find the lost or unavailable instrument ... Third, the third-party must demonstrate that it did not lose or destroy the document fraudulently or in bad faith.
Finally, we note that equity requires that such ancient documents as the insurance certificates at issue here be admitted because insurance coverage cannot be proved in any other manner under the facts of this case....
In the instant case, the appellants maintain that the certificates do not outline the terms and coverage of the policies and that an expert failed to establish the authenticity of the certificates. However, the affidavit of Fred Shuber, III, Eagle's General Manager and records keeper, was submitted into evidence to prove the authenticity of the insurance certificates. The appellants had little evidence to rebut that of Eagle's and for this reason we follow our reasoning in Hoerner. There is no dispute that the policies cannot be located. The record reveals that an effort was made by Eagle to locate the policies, but to no avail. Further, nothing in the record indicates that Eagle destroyed *1037 the documents in bad faith. We also conclude, as we did in Hoerner, that the district court has wide discretion when applying the best-evidence rule and in this case the district court has done so "sensibly and with reason."
As to OneBeacon, the appellants argue that it no longer owes a defense or indemnity to Eagle because its policies are exhausted. The appellants maintain that Eagle and Commercial Union[2] entered into an "Agreement[3]" in 1996 indemnifying Commercial Union (as well as other polices) for the years 1968-1976. The appellants maintain that the district court misconstrued the impact of that "Agreement" which would have precluded summary judgment. They further argue that OneBeacon has spent all of the $2.4 million aggregate set forth in the "Agreement" between it and Eagle. The appellants rely on M.H. Detrick Co. v. Century Indemnity Co., 299 Ill.App.3d 620, 233 Ill.Dec. 513, 701 N.E.2d 156, 159-61 (1998); ACandS, Inc. v. Travelers Cas. & Sur. Co., 2004 WL 2075117 (E.D.Pa. 2004), explaining that these types of "Agreements" may not have been presented previously for judicial review in Louisiana, and that these cases supports their theory of exhaustion. Specifically OneBeacon purports that the basis for its claim for exhaustion is that it allocated all indemnity payments for all claims and lawsuits to the only provision of its policies with aggregate limits; the products hazard provision.
Eagle maintains that OneBeacon bore the burden of proving that all claims and lawsuits asserted against Eagle fell under the products hazard provision of its policies, as opposed to the general liability provision, which has no aggregate amount. Eagle further argues that OneBeacon never considered the facts and circumstances of whether Eagle had relinquished physical possession of any asbestos-containing product; whether exposure had occurred while Eagle was installing, repairing or removing a product; or whether it ever treated any claims as general liability claims under Eagle's policies.
The exhaustion clause contained in the "Agreement" reads as followed:
Each Carrier shall apply its Indemnity Payments to the policy or policies that it believes is/are required to respond to the Subject Claims. If a Carrier determines that it has exhausted all aggregate limits applicable to bodily injury claims under one or more of its policies, it shall notify all Parties of such determination and the basis for that determination. Once a Carrier has provided such notice, it shall not be obligated to pay any share of covered defense and indemnity costs incurred thereafter with respect to the exhausted policy or policies. The Insured agrees to notify the applicable excess liability insurer, if any, of exhaustion of the underlying coverage and to use its best efforts to effect such excess liability insurer's participation in the defense and indemnity of the Subject Claims. The Carriers will attempt among themselves, and if appropriate, with excess carriers to agree on an amendment to this Agreement that will reapportion the covered indemnity costs that would otherwise have been borne by a Carrier that has exhausted the aggregate limits on a policy or policies. If no such agreement can be reached within thirty (30) days of the date of the notice that the limits have been exhausted, any Party may terminate this Agreement *1038 on thirty (30) days notice to all other Parties.
Louisiana has a long history of cases, which assert an insurer's duty to defend its insured. Generally the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. American Home Assur. Co. v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969). The insurer's duty to defend suits is determined by the allegations of the petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Id. The allegations of the petition should be literally construed in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend the suit against its insured. Id. Also See Rando v. Top Notch Properties, L.L.C., XXXX-XXXX (La.App. 4 Cir. 6/2/04), 879 So.2d 821.
A liability insurer's duty to defend and the scope of its coverage are separate and distinct issues. Dennis v. Finish Line, Inc., 93-0638 (La.App. 1 Cir. 3/11/94), 636 So.2d 944, 946. It is likewise well-recognized that the obligation of a liability insurer to defend suits against its insured is generally broader than its obligation to provide coverage for damages claims. Steptore v. Masco Construction Co., Inc., 93-2064, p. 8 (La. 8/18/94), 643 So.2d 1213, 1218. The issue of whether a liability insurer has the duty to defend a civil action against its insured is determined by the application of the "eight-corners rule," under which an insurer must look to the "four corners" of the plaintiff's petition and the "four corners" of its policy to determine whether it owes that duty. Vaughn v. Franklin, 00-0291, p. 5 (La. App. 1 Cir. 13/28/01), 785 So.2d 79, 84. Under this analysis, the factual allegations of the plaintiff's petition must be liberally interpreted to determine whether they set forth grounds which raise even the possibility of liability under the policy. Id. In other words, the test is not whether they do not unambiguously exclude coverage. Id. Similarly, even though a plaintiff's petition may allege numerous claims for which coverage is excluded under the insurer's policy, a duty to defend may nonetheless exist if there is at least a single allegation in the petition under which coverage is not unambiguously excluded. Employees Ins. Representatives, Inc. v. Employers Reinsurance Corp., 94-0676, p. 3 (La.App. 1 Cir. 3/3/95), 653 So.2d 27, 29.
Generally, an insurer's duty to defend lawsuits against its insured is broader than its liability for damages claim. The duty to defend is determined by the allegations of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Yount v. Maisano, 627 So.2d 148 (La. 1993); Matheny v. Ludwig, 32,288 (La.App. 2 Cir. 9/22/99), 742 So.2d 1029. Thus, assuming all the allegations of the petition to be true, if there would be both coverage under the policy and liability to the plaintiff, the insurer must defend the lawsuit regardless of its outcome. Yount, supra; Matheny, supra. The duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. Steptore v. Masco Const. Co., Inc., 93-2064 (La. 8/18/94), 643 So.2d 1213; Yarbrough v. Federal Land Bank of Jackson, 31,815 (La.App. 2 Cir. 3/13/99), 731 So.2d 482.
In the instant case, indemnification is premature. The law supports that the appellants have a duty to defend, especially during litigation. Further, the "Agreement" submitted by OneBeacon to rebut its duty to defend leaves much for the court to interpret. While one may argue that interpretation of the "Agreement" equates to a genuine issue of material fact, *1039 we find that the evidence speaks for itself and the duty to defend is imminent. It is in the best interest to all involved for the appellants to defend Eagle at this juncture in the process.

Assignment of Error # 2

Standard of Review
Contempt of court proceedings in civil cases are governed by La.Code Civ. P. art. 221, et seq. which defines contempt as "any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." The Code provides for two kinds of contempt, direct and constructive. Direct contempt of court is defined in La.Code Civ. P. art. 222 as "one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record." Constructive contempt is defined in La.Code Civ.P. art. 224 as "any contempt other than a direct one" and this article lists the following acts which constitute a constructive contempt of court: (1) Wilful neglect or violation of duty by a clerk, sheriff, or other person elected, appointed, or employed to assist the court in the administration of justice; McKee v. McKee, 2003-245 (La.App. 3 Cir. 2003), 856 So.2d 135. The burden of proof in a civil contempt proceeding is by a preponderance of the evidence and appellate review is the manifestly erroneous standard. Id. See Davis v. Harmony House Nursing Home, 35,080 (La.App. 2 Cir. 10/31/01), 800 So.2d 92, writ denied, 01-3162 (La. 2/22/02), 810 So.2d 1143.
Constructive contempt of court is any contempt other than a direct one, including the "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court." La. C.C.P. art. 224. A trial court is vested with great discretion to determine whether circumstances warrant holding a party in constructive contempt of court pursuant to La. C.C.P. art. 224 for wilful disobedience to a court order. Alagdon v. Guertin, 97-0235, p. 5 (La.App. 4 Cir. 10/1/97), 701 So.2d 480, 483. Moreover, a trial court must find that the party's violation was wilful in order to hold that party in contempt, meaning that the party must have "`intentionally, knowingly and purposely acted or failed to act.'" Id., citing Riley v. Pennix, 442 So.2d 563, 565 (La.App. 1st Cir.1983). A court may not hold a party in contempt unless it finds that the party's reasons for violating the order were without justifiable excuse. Id.
In determining the appropriate penalty for disobedience of or disregard for court orders relating to pretrial procedures, a court is to consider whether the attorney and/or the client committed the misconduct, the stage of the proceeding at which the violation occurred, the presence or absence of prejudice to the opposing party's preparation of the case, and the nature and persistency of the misconduct that constitutes the violation. Benware v. Means, 99-1410 (La.1/19/2000), 752 So.2d 841, 847. Each case must be decided upon its own facts and circumstances, and the trial judge is vested with much discretion in determining the penalty for a violation of pre-trial or discovery orders. Id. A trial court's decision to impose sanctions for failure to comply with a pre-trial or discovery order, as well as its choice of sanctions, will not be reversed absent a clear showing of an abuse of discretion. See Johnson v. Nguyen, XXXX-XXXX (La.App. 4 Cir. 7/11/01), 793 So.2d 370; Reeder v. New York Life Insurance Company, 01-148 (La.App. 5 Cir. 6/27/01), 790 So.2d 712. Not only is the trial court's choice of sanction subject to the abuse of *1040 discretion standard of review, but as with any other case, the trial court's factual findings cannot be reversed by a reviewing court where there is a reasonable factual basis in the record for such a finding and where such a finding is not clearly wrong. Horton v. McCary, 93-2315 (La.4/11/94), 635 So.2d 199, 205 (J. Kimball dissents, citing Stobart v. State Through Dept. of Transportation and Development, 617 So.2d 880 (La.1993)). Watters v. Department of Social Services XXXX-XXXX (La.App. 4 Cir. 2003), 849 So.2d 734.
The district court found the appellants in constructive contempt of court for failing to provide a full defense for Eagle after the "clear mandate to counsel for the insurers in open court, on the record, on April 16, 2004, and their refusal to obey that judgment.[4]" The district court fined the appellants $500 per day until compliance. The record clearly indicates that the appellants were informed of the possibility of contempt for failing to provide a defense to Eagle. The district court made this clear in open court and again in the Judgment dated March 26, 2004. The appellants argue that they believed that judgment of the district court was interlocutory and that they did not have to abide by it until it became a final judgment.
We find that the appellants failed to articulate to the district court a sound legal reason for failing to defend Eagle after being instructed to do so. Further, we cannot conclude that the district court abused its discretion in casting the appellants in contempt. We rule in accordance with Horton v. McCary, 93-2315 (La.4/11/94), 635 So.2d 199, 205, finding that there is a reasonable factual basis in the record for such a finding and that such a finding is not clearly wrong. Further, the appellants' argument that they were not in bad faith is of no moment.

Decree
For the reasons stated herein, we affirm the judgment of the district court granting partial summary judgment in favor of Eagle. We also conclude that the district court did not abuse its discretion in finding OneBeacon and American Employers Insurance in contempt of court.
AFFIRMED.
NOTES
[1] The Appellants also offer six (6) issues for this Court's review that read considerably different from the above listed Assignments of Error. Further, the Appellants briefed argument is not cohesive with the assignments offered or the issues presented. The Appellants fail to offer this Court a succinct argument, therefore, we have condensed their assignments, issues, and legal analysis to address what we find are the appealable concerns.
[2] OneBeacon is the successor to Commercial Union.
[3] "Agreement" meaning an "Agreement for Defense and Indemnity for the Subject Claims."
[4] Excerpt from the district court's Reasons for Judgment dated May 26, 2004.