MAX N. TOBIAS, Jr., Judge.
_JjWarren L. Reuther, Jr. (“Reuther”), the plaintiff herein, filed the instant appeal from a judgment finding him in contempt of court. After reviewing the record and applicable law, we reverse the trial court and set aside the judgment.
On 1 November 2001, Reuther filed suit for wrongful termination against James E. Smith, Jr. (“Smith”), his business partner’s son, Reuther’s nephew and then lawyer.[1] On 4 November 2004, Smith filed a motion for contempt of court, complaining that Reuther had violated a preliminary injunction entered on 4 April 2002, and modified on 21 July 2004, which prohibited Reuther from acting as an agent of certain named hospitality enterprise corporations. The motion was filed by Smith as president of the named corporations, and not on behalf of himself personally. In connection with the motion for contempt, Smith also filed a motion to expedite the hearing, in response to which the trial court set a 2 December 2004 | ¿hearing date. The record does not reflect the date the motions were served on Reuther.
The preliminary injunction dated 4 April 2002, was narrowly drawn, stating:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Petitioners’ Application for Preliminary Injunction is here GRANTED restraining, *11 enjoining and prohibiting Defendant, Warren L. Reuther, Jr., his agents, employees, and all other persons, firms, or corporations acting or claiming to act on his behalf, from using the corporate stationary, from using the title of chief executive officer and from acting as an agent of the Corporations in any way without the approval of the Board of Directors of the Corporations, including with regard to the affairs of Shreveport Paddlewheels, L.L.C.
The preliminary injunction was modified on 31 July 2004, to prohibit Reuther from performing additional acts,[2] repeating the prohibition of acting as an agent of the corporations in anyway without prior approval of the Board of Directors of the corporations.
The basis of the motion for contempt concerns a telephone call allegedly made by Reuther on 27 October 2004, to a fuel supplier of New Orleans Tours. The motion contends that Reuther acted as a representative of New Orleans Tours as well as New Orleans Paddlewheels during the conversation, in violation of the preliminary injunction.
|3On 2 December 2004, the trial court heard the matter. While Reuther did not file an opposition to the motion, he was prepared to present live testimony at the expedited trial. However, the trial court prevented Reuther from presenting any evidence and did not allow his attorney to present argument on his client’s behalf, because an opposition had not been filed to the contempt motion. The only evidence presented by Smith in support of the motion was two affidavits. At the conclusion of the matter, the trial court found Reuther in contempt of court and assessed him a $15,000.00 fine to be paid directly to Smith plus attorney’s fees, although no proof of attorney’s fees was ever presented to the court. The judgment ultimately signed by the court awarded Smith the sum of $2,500.00 in attorney’s fees. The trial court denied a subsequent motion for new trial filed by Reuther on 10 January 2005.
Reuther has listed seven assignments of error. These are:
1. It was reversible error for the trial court to grant Smith’s motion for contempt without evidence or a trial.
2. It was reversible error for the trial court to grant Smith’s motion for contempt when the plaintiff did not violate the trial court’s orders.
3. It was reversible error for the trial court to grant relief for which Smith did not pray.
4. It was reversible error for the trial court to order a fine for contempt be paid to a litigant rather than to the court.
5. It was reversible error for the trial court to order the plaintiff to pay a fine that constitutes 15 times the maximum allowed by law.
*12 6. It was reversible error for the trial court to order the plaintiff to pay attorney’s fees for contempt when the law does not allow them.
|47. It was reversible error for the trial court to deny the plaintiffs motion for new trial for the reasons stated.
Contempt of court proceedings in civil cases are governed by La. C.C.P. art. 221, et seq., which defines contempt as “any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority.” See Lang v. Asten, Inc., 04-1665 (La.App. 4 Cir. 3/30/05), 900 So.2d 1031. The Code provides for two kinds of contempt, direct and constructive. Direct contempt of court is defined in La. C.C.P. art. 222 as “one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record.” Constructive contempt is defined in La. C.C.P. art. 224 as “any contempt other than a direct one” and the article lists the following act, which constitutes a constructive contempt of court: the “wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court.” La. C.C.P. art. 224(2). The burden of proof in a civil contempt proceeding is by a preponderance of the evidence and appellate review is the manifestly erroneous standard. Id. at p. 12, 900 So.2d at 1039. See also Davis v. Harmony House Nursing Home, 35,080 (La.App. 2 Cir. 10/31/01), 800 So.2d 92, writ denied, 01-3162 (La.2/22/02), 810 So.2d 1143.
In Dauphine v. Carencro High School, 02-2005 (La.4/21/03), 843 So.2d 1096, the Supreme Court stated:
A contempt of court proceeding is either criminal or civil, which is determined by what the court primarily 1 ¡¡seeks to accomplish by imposing sentence. Shillitani v. United States, 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). In a criminal contempt proceeding, the court seeks to punish a person for disobeying a court order, whereas in a civil contempt proceeding, the court seeks to force a person into compliance with a court order. State in the Interest of R.J.S., 493 So.2d [1199 (La.1986)] at 1202 and n. 7 (citing Shillitani, 384 U.S. at 364, 86 S.Ct. 1531). In the instant case, the object of the proceeding was to determine whether Drs. Easton and Aguillard should be punished for willfully disobeying the court’s May 18, 2002 order, thus it is a criminal contempt proceeding.
Criminal contempt is a crime, and the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal proceeding against conviction of a crime except upon proof beyond a reasonable doubt of every fact necessary to constitute the contempt charge. State in the Interest of R.J.S., 493 So.2d at 1202. On appellate review of criminal contempt, the reviewing court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude that every element of the contempt charge was proved beyond a reasonable doubt. Id.
Willful disobedience of a court order requires a consciousness of the duty to obey the order and an intent to disregard that duty. Id. at 1203. The purpose of charging and convicting a defendant for criminal contempt is vindication of the public interest by punishment of contemptuous conduct. Id. (citing R. PERKINS, CRIMINAL LAW 533 (1969)). Therefore, in order to constitute willful disobedience necessary for criminal contempt, the act or refusal to *13 act must be done with an intent to defy the authority of the court. Id. (citing E. DANGEL, CONTEMPT § 171 (1939)).
General criminal intent “is present ... when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.” [Boldface supplied for emphasis.]
Id. at 14-15, 843 So.2d at 1107-08.
La. C.C.P. art. 225 requires a trial of a constructive contempt allegation:
A. Except as otherwise provided by law, a person charged with committing a constructive contempt of | ficourt may be found guilty thereof and punished therefor only after the trial by the judge of a rule against him to show cause why he should not be adjudged guilty of contempt and punished accordingly. The rule to show-cause may issue on the court’s own motion or on motion of a party to the action or proceeding and shall state the facts alleged to constitute the contempt. A person charged with committing a constructive contempt of a court of appeal may be found guilty thereof and punished therefor after receiving a notice to show cause, by brief, to be filed not less than forty-eight hours from the date the person receives such notice why he should not be found guilty of contempt and punished accordingly. [Emphasis added.]
Punishment for contempt of court is found in La. R.S. 13:4611, which provides in pertinent part:
(1) The supreme court, the courts of appeal, the district courts, family courts, juvenile courts, and the city courts may punish a person adjudged guilty of a contempt of court therein, as follows:
* * *
(b) For disobeying or resisting a lawful retraining order, or preliminary or permanent injunction, by a fine of not more than one thousand dollars, or by imprisonment for not more than twelve months, or both[.]
The matter before the trial court concerned an allegation of constructive criminal contempt. Smith contends that Reuther violated the court’s preliminary injunction by making a telephone call to Smith’s business associates and acting as an agent on behalf of the hospitality enterprise corporations. Thus, pursuant to article 225, the trial court was required to hold a trial and receive evidence.
As this case involves criminal contempt, Reuther was entitled to confront and cross-examine the witnesses against him. La. Const, art. I, § 16. La. C.E. art. 611(B) provides that a witness may be cross-examined on any matter relevant to any issue in the case. Due process affords a defendant the right of full 17confrontation and cross-examination of the witnesses testifying against him. State v. Van Winkle, 94-0947, p. 5 (La.6/30/95), 658 So.2d 198, 201-02. The trial court has discretion to control the extent of the examination of witnesses as long as it does not deprive the defendant of his right to effective cross-examination. State v. Hawkins, 96-0766, p. 6 (La.1/14/97), 688 So.2d 473, 479; State v. Huckabay, 00-1082 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, writ denied, 02-0703 (La.11/1/02), 828 So.2d 564. Eviden-tiary rules may not supersede the fundamental right to present a defense. Id.
Generally, an affidavit is inadmissible as hearsay. King’s Joint Venture v. Marino, 02-0847, p. 4 (La.App. 4 Cir. 9/25/02), 827 So.2d 521, 524, citing Arkla, Inc. v. Maddox and May Bros. Casing Service, Inc., 624 So.2d 34, 36 (La.App. 2 Cir.1993). In the rare instances where an *14 affidavit is acceptable as a substitute for testimony, an affidavit must be based on personal knowledge, must set forth only facts admissible in evidence, and must show that the affiant is competent to testify to the matters contained therein. Arkla, Inc., 624 So.2d at 36 (citations omitted). A sworn affidavit is hearsay and is not competent evidence unless its use is specifically authorized by statute. Board of Commissioners of Port of New Orleans v. Louisiana Commission on Ethics for Public Employees, 416 So.2d 231, 238 (La.App. 1 Cir.), writ denied, 421 So.2d 248 (La.1982); see also Pyburn v. Walle Corporation, 454 So.2d 1128, 1130 (La.App. 4 Cir.1984).
In the recent opinion of Lang v. Asten, Inc., 05-1119 (La.1/13/06), 918 So.2d 453, the Supreme Court granted the writ application .of an insurance company that had been held in constructive contempt for failing to obey an order requiring, that it provide its purported insureds a “full and complete defense” while the insureds’ motion for new trial and then their appeal were’ | spending and unresolved. The Court reaffirmed prior jurisprudence by quoting La. C.C.P. art 225(A), which requires a trial before a person can be found guilty of, and punished for, a constructive contempt of court.
After reviewing the record, we find that the trial court did not hold a trial or even an evidentiary hearing on the motion for constructive contempt. In addition, the affidavits, even if we were to find them admissible, which we do not, fail to allege that Reuther represented that he was acting as an agent for any of the hospitality enterprise corporations.
The first affidavit was 'executed by David B. Hecker (“Hecker”), the chief financial officer for Retif Oil & Fuel, L.L.C. (“Retif’), who stated that on 27 October 2004, he received a telephone call from Reuther inquiring as to the balance owed by New Orleans Tours and whether it was making payments on its account. Reuther advised Hecker that New Orleans Tours was experiencing financial problems. Hecker contacted Bob Gaudet (“Gaudet”), Retifs sales manager, and told him of the conversation. He then told Gaudet that it was his opinion that Reuther was formulating a list of creditors for bankruptcy purposes. During a subsequent telephone call, Reuther also inquired about New Orleans Paddlewheels’ accounts receivable, but Hecker told him that Retif did not sell to that company. Reuther told Hecker that current management was “running the company into the ground.” The affidavit does not show or prove that Reuther violated the preliminary injunction.
Erik K. Windstein (“Windstein”), the general manager of Airport Shuttle and the risk manager of New Orleans Hospitality Companies, executed the second affidavit. On 28 October 2004, he received a telephone call from John Manuel, a New Orleans Tours and Airport Shuttle mechanic, . who told him that their fuel | asupplier, Retif, shut off the fuel pumps. Windstein called Gaudet and was .told that the CFO for Retif [Hecker] had received a call from Reuther, wherein Reuther inquired about the accounts and receivables of New Orleans Tours. Gaudet also told Weinstein that Reuther informed Hecker that New Orleans Paddlewheels was filing for bankruptcy. Again, the affidavit does not show or prove that Reuther violated the preliminary injunction.[3]
*15 Because no proof exists in the record demonstrating that Reuther violated the preliminary injunction and, thus, in contempt of court, we reverse and set aside the judgment of the trial court. While Reuther may have at some level violated the spirit of the preliminary injunction, the injunction is quite specific as to what constitutes a forbidden act. The acts described do not violate the clear language of the injunction as written. Accordingly, we remand the matter to the court below for further proceedings.

REVERSED AND REMANDED.

ARMSTRONG, C.J., concurs.

. Reuther also filed suit against the various entities in which he held stock and of which Smith was the president. These entities are: Bayou Sauvage Swamp Tours, Inc., Airport Holdings, Inc., Airport Shuttle Colorado, Inc., Airport Shuttle, Inc. ("Airport Shuttle”), Chicory Building, Inc., Delta Transit, Inc., Destination Management, Inc., Hospitality Enterprises, Inc., Lodging, Inc., New Orleans International Cruise Terminal, Inc., New Orleans Paddlewheels, Inc. ("New Orleans Pad-dlewheels”), New Orleans Tours, Inc. ("New Orleans Tours”), On The Town, Inc., RSC Management, Inc., and Visitor Marketing, Inc. For the purposes of this opinion, we refer to all the defendants collectively as "Smith.”

.These acts include:
1. Using corporate stationary or using stationary identical to corporate stationary;
2. From using the title of "Chief Executive Officer”, or any other office or director title;
3. From acting as an agent of the corporations in any way without prior approval of the Board of Directors of the Corporations;
4. From interfering in any way with the Corporations’ banking relationships, in-eluding, but not limited to asserting any authority to withdraw funds or direct any actions regarding the corporations’ accounts;
5. From intervening in any way into the President of the Corporations' authority to open bank accounts, close bank accounts, and/or designate signatory power over corporate banking accounts; and
6. From entering corporate properties without prior approval.

. It appears that the most derogatory information to Retif was that New Orleans Paddle-wheels was filing for bankruptcy. However, a close reading of the affidavits reveals that the bankruptcy issue was only an opinion of Hecker; Reuther never stated that New Or *15 leans Paddlewheels would in fact be filing for debtor relief.