972 So.2d 1230 (2007)
Nathaniel JOSEPH
v.
ENTERGY, et al.
No. 2007-CA-0688.
Court of Appeal of Louisiana, Fourth Circuit.
December 5, 2007.
*1232 Philip C. Ciaccio, Jr., Gretna, LA, for Third Party Defendants/Appellants. Tristem, Ltd. and Joe Seeber.
Marcus V. Brown, Entergy Services, Inc., New Orleans, LA, and Marc D. Winsberg, William P. Gibbens, Schonekas, Winsberg, Evans & McGoey, L.L.C., New Orleans, LA, for Defendant/Appellee, Entergy New Orleans, Inc.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, Judge MAX N. TOBIAS, JR.).
PATRICIA RIVET MURRAY, Judge.
This appeal arises out of a contempt judgment. The trial court found the third party defendant, TriStem, Ltd., and its president, Joe Seeber, in contempt for a second time; ordered them to pay $1,000 in attorney's fees to the defendant, Entergy; and imposed a suspended forty-eight hour incarceration sentence on Mr. Seeber. We affirm the finding of contempt, but vacate the award of attorney's fees.

FACTUAL AND PROCEDURAL BACKGROUND
The underlying suit out of which the contempt judgment arises is a tort suit that was filed by Nathaniel Joseph against Entergy and the City of New Orleans. In that suit, Mr. Joseph sought to recover for injuries he sustained on March 18, 1996, when a light pole fell and hit him on his head. In that suit, Entergy filed a third party demand for indemnification against, among others, TriStem, a Texas consulting company. Entergy asserted in the third party demand that TriStem, while acting as a consultant to the City, performed an audit of the streetlights and failed to discover that the light pole in question was in disrepair. The trial court severed the third party demand and tried the case against Entergy and the City. A judgment was rendered finding only Entergy liable. This court affirmed the finding of liability on the part of Entergy in Joseph v. Entergy, 00-2213 (La.App. 4 Cir. 2/13/02), 811 So.2d 54. Entergy then proceeded with the third party indemnity action.
On June 22, 2004, Entergy filed a motion for protective order and contempt against TriStem alleging that its president, Mr. Seeber, sent correspondence to Entergy's audit committee making allegations of fraud against Entergy. Entergy also claimed that Mr. Seeber made inappropriate contact with the trial court judge, making unfounded allegations against Entergy. *1233 On August 5, 2004, the trial court granted Entergy's motion for protective order and ordered that "neither TriStem, Ltd. nor Joe Seeber shall have any contact with Entergy or its representatives other than its counsel of record in this action, outside of a formal setting such as a deposition or judicial forum."[1] TriStem and Mr. Seeber neither appealed nor collaterally attacked the August 5, 2004 protective order.
On September 30, 2004, Entergy filed its first contempt motion against TriStem and Mr. Seeber. Entergy alleged that Mr. Seeber had continued sending correspondence to representatives of Entergy making allegations against Entergy of fraud and mismanagement in violation of the trial court's August 5, 2004 protective order. On October 25, 2004, the trial court rendered judgment holding TriStem and Mr. Seeber in contempt and ordering them to pay Entergy $5,000.00 in attorney's fees. We affirmed the trial court's earlier finding of contempt, but remanded on the issue of attorney's fees, reasoning that "we can find no authority for allowing a court to order payment of attorney fees in lieu of a contempt fine. As it is unclear from the record before this Court as to the intent of the trial court, we remand the matter for clarification." Joseph v. Entergy, 05-0263 (La.App. 4 Cir. 8/3/05), 918 So.2d 47.
On May 4, 2005, the trial court granted TriStem's motion for summary judgment, dismissing it from the underlying suit. On June 4, 2005, Entergy took a devolutive appeal from that judgment, which is still pending.
On July 21, 2005, Entergy filed a second contempt motion. This motion was based on correspondence dated June 23, 2005 that Mr. Seeber sent to Entergy's audit committee. Enclosed with the correspondence was a copy of the prologue to the Mr. Seeber's then soon to be published book entitled "Wired for Greed." In the prologue to the book, Mr. Seeber recites the facts of the Joseph case.
As noted above, on August 3, 2005, we rendered our decision affirming the trial court's judgment granting Entergy first contempt motion, but remanding for a clarification of the attorney's fee award. On August 29, 2005, Hurricane Katrina struck the New Orleans area.
On October 25, 2006, Entergy filed a third contempt motion in which it incorporated the arguments it raised in its pending second motion. In addition, Entergy asserted that Mr. Seeber had sent correspondence dated October 3, 2006 to Entergy audit committee members in which he referenced the Joseph litigation; particularly, the letter states:
To help inform the Court how Entergy is capable of such a malevolent act, we will advise them of the lawsuit. Entergy has filed against TriStem. TriStem has never had any contractual obligation to do anything for Entergy. TriStem has never contracted with anyone to assess the structural integrity of street light poles. None-the-less, Entergy filed suit against TriStem because of a street light that fell oil a man in New Orleans. A clear case of legal harassment.
"At the February 9, 2007 hearing on the third contempt motion, Mr. Seeber acknowledged in his testimony that the above-quoted excerpt from his October 3, *1234 2006 letter was a reference to the Joseph case.
Following the hearing, the trial court found the actions of TriStem and Mr. Seeber to be in violation of its August 5, 2004 protective order and to be acts of constructive contempt under La. C.C.P. art. 224(2). The trial court further ordered in its judgment that TriStem and Mr. Seeber pay to Entergy $1,000 in attorney's fees, and pursuant to La. R.S. 13:4611, that Mr. Seeber serve forty-eight hours of incarceration. However, the trial court suspended the order of incarceration.[2] The trial court also addressed in its judgment this court's August 3, 2005 order remanding for clarification of the trial court's October 25, 2004 award of attorney's fees. Pursuant to La. R.S. 13:4611, the trial court fined TriStem and Mr. Seeber $500 for that prior finding of contempt.[3] This appeal followed.

DISCUSSION
On appeal, TriStem and Mr. Seeber raise three assignments of error: (i) the trial court lacked jurisdiction to enforce the protective order; (ii) the trial court erred in finding the actions of TriStem and Mr. Seeber constituted constructive contempt; and (iii) the trial' court erred in awarding attorney's fees to Entergy. We separately address each issue.
(i) trial court's jurisdiction to enforce protective order
TriStem and Mr. Seeber argue that the trial court's judgment granting TriStem's motion for summary judgment, from which Entergy took a devolutive appeal, divested the trial court of jurisdiction to entertain Entergy's third contempt motion. In support they cite La. C.C.P. art. 2088, which provides that a trial court is divested of jurisdiction over "all matters in the case reviewable under the appeal." La. C.C.P. art.2088.[4] They contend that because the trial court's judgment granting TriStem's motion for summary judgment *1235 had the effect of dismissing it from the case, the enforcement of the protective order against TriStem and its president, Mr. Seeber, is a matter reviewable on appeal.
Entergy counters that the appeal involves only the summary judgment. It points out that TriStem and Mr. Seeber never appealed the granting of the protective order. Entergy further points out that although they appealed the trial court's grant of Entergy first contempt motion, this court affirmed the finding of contempt and remanded only for a clarification regarding the attorney's fees award. Entergy still further points out that the protective order is still in effect because this litigation is still pending, and TriStem and its president, Mr. Seeber, are still parties to this litigation. Lastly, Entergy contends that the trial court retains the inherent authority to enforce its orders and to punish for contempt of court.
We have construed the phrase "not reviewable on appeal" in Article 2088 to mean that the trial court has continuing jurisdiction over all matters that are "unaffected by the appeal," even if the matter is not specifically enumerated in Article 2088. State Through Dep't. of Social Services on Behalf of Harden v. Southern Baptist Hosp., 94-2228, 94-2229 (La.App. 4 Cir. 10/12/95), 663 So.2d 443. Indeed, the preamble to Article 2088 expressly refers to the listing therein of the matters over which the trial court has continuing jurisdiction and which are not reviewable on appeal as "including" the right to take any of those listed actions. "The participle including typically indicates a partial list." Bryan A. Garner, Black's Law Dictionary, 777 (8th ed.2004). The listing in Article 2088 thus has been characterized as "illustrative, but not exclusive." Roger A. Stetter, et al., Louisiana Appellate Practice Handbook § 5.2 (1989). This characterization is supported by the existence of other statutory provisions that contain particular reservations of the trial court's jurisdiction while an appeal is pending.[5]
Although there is no express provision in Article 2088 for the trial court to retain jurisdiction over the enforcement of a protective order, we find that this case falls within the scope of a matter not reviewable on appeal. We thus find that the trial court had continuing jurisdiction to entertain Entergy's third contempt motion. In so finding, we note, as Entergy points out, that a trial court has inherent power to enforce its orders.
(ii) constructive contempt
In our prior decision in this case we summarized the applicable principles regarding contempt as follows:
Contempt of court proceedings in civil cases are governed by La. C.C.P. art. *1236 221, et seq., which define contempt as "any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." The Code of Civil Procedure provides for two kinds of contempt, direct and constructive. Direct contempt of court is defined in La. C.C.P. art. 222 as "one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record." Constructive contempt of court is any contempt other than a direct one, including the "[w]willful disobedience of any lawful judgment, order, mandate, writ, or process of the court." La. C.C.P. art. 224(2).
A trial court is vested with great discretion to determine whether circumstances warrant holding a party in constructive contempt of court pursuant to La. C.C.P. art. 224 for willful disobedience of a court order. Lang v. Asten, Inc., 04-1665, p. 12 (La.App. 4 Cir. 3/30/05), 900 So.2d 1031, 1039. Moreover, a trial court must find that the party's violation was willful in order to hold that party in contempt, meaning that the party must have "`intentionally, knowingly and purposely acted or failed to act.'" Id. A court may not hold a party in contempt unless it finds that the party's reasons for violating the order were without justifiable excuse. Id.

Entergy, 05-0263 at pp. 4-5, 918 So.2d at 50-51. Characterizing the contempt proceeding in this case as civil in nature, we reasoned that "it is clear that this was a civil contempt proceeding because the object was to force the appellants' compliance with, the court order and put a stop to [Mr.] Seeber's conduct in contacting representatives of Entergy in violation of the protective order." Entergy, 05-0263 at, pp. 6, 918 So.2d at 51. We thus found it appropriate to apply a preponderance of the evidence standard in reviewing the trial court's contempt ruling. We also noted that "[t]he manifest error rule is used when appellate courts are called to review the propriety of civil contempt orders." Id. We find these same principles apply to the present appeal.
On appeal, TriStem and Mr. Seeber argue that the trial court's finding of contempt was erroneous because the correspondence on which the finding of contempt is based did not refer to the Joseph case. This argument, however, is belied by Mr. Seeber's own testimony at the `hearing acknowledging that the reference in the October 3, 2006 letter was to the Joseph case. The other correspondence sent on June 23, 2005 was the cover letter that was sent with a copy of the prologue to Mr. Seeber's book. As noted, the prologue to the book included a discussion of the Joseph case. The trial court's factual finding that there was a violation of the protective order as a result of Mr. Seeber sending the June 2005 and October 2006 correspondence, which both refer to the Joseph case, is not manifestly erroneous.
TriStem and Mr. Seeber further argue that the correspondence at issue was not within the ambit of the protective order because TriStem, as part of its consulting business, is required to communicate regularly with Entergy in serving its clients and negotiating for reimbursement of utility overcharges. They further contend that the correspondence at issue was sent solely for the purpose of "TriStem's business of auditing utility companies." Again, this argument is belied by the express *1237 reference in the correspondence and attachments thereto in the Joseph case.
TriStem and Mr. Seeber still further argue that enforcing the protective order will result in a violation of Mr. Seeber's First Amendment right to free speech. They contend that Entergy is attempting to prevent them from revealing information set forth in Mr. Seeber's book to the individuals responsible for overseeing Entergy's finances. Entergy counters that the trial court did not preclude Mr. Seeber from publishing his book or making allegations of fraud to anyone other than Entergy or its representatives. As Entergy points out, the trial court simply ordered that Mr. Seeber comply with the rule that prohibits communication with a person represented by counsel other than through that person's counsel. See Rule 4.2 of La. Rules of Professional Conduct. Indeed, this was the basis for the issuance of the protective order.
Finally, TriStem and Mr. Seeber emphasize that when the correspondence at issue was sent TriStem had been dismissed from the suit on summary judgment. Giving the timing of the correspondence, they suggest that the protective order was no longer binding. Entergy counters that TriStem and its president, Mr. Seeber, remain parties to this litigation pending the appeal and that the protective order remains in effect. We agree.
Based on the circumstances of this case, we find no abuse of discretion in the trial court's finding that under these facts TriStem and Mr. Seeber willfully disobeyed the protective order. We thus affirm the trial court's finding, of constructive contempt.
(iii) attorney's fees award
TriStem and Mr. Seeber argue that the trial court abused its discretion in ordering them to pay Entergy $1,000 in attorney's fees in a contempt proceeding. We agree. Attorney fees are generally not recoverable unless expressly provided for by statute or contract. Rivet v. State, 96-0145 (La.9/5/96), 680 So.2d 1154; Huddleston v. Bossier Bank & Trust Co., 475 So.2d 1082 (La.1985). The applicable contempt statute does not provide for attorney fees. La. R.S. 13:4611. Indeed, "[n]o statutory provision provides for the allowance of attorney's fees in a contempt action." Reeves v. Thompson, 95-0321, p. 10 (La.App. 4 Cir. 12/11/96), 685 So.2d 575, 580 (citing Kelly v. Terrebonne Parish Police Jury, 449 So.2d 568, 571 (La.App. 1st Cir.1984) and Gwatney v. Miller, 386 So.2d 198, 199 (La.App. 3rd Cir.1980)); see also Maggio v. Robinson, 31,913, pp. 4-5 (La. App. 2 Cir. 5/5/99), 741 So.2d 103, 107. We thus reverse the portion of the trial court judgment awarding $1,000 in attorney's fees to Entergy.

DECREE
For the foregoing reasons, the judgment of the trial court awarding $1,000 in attorney's fees to Entergy is reversed. In all other respects, the judgment of the trial court is affirmed.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] The trial court also imposed on TriStem and $250. Mr. Seeber attorney's fees in the amount of
[2] The trial court provided that "upon a future finding by this Court that TriStem and/or Joe Seeber has violated the Protective Order, the portion of this Order requiring Joe Seeber to be incarcerated for 48 hours is reinstated."
[3] Although the trial court's judgment also orders that TriStem and Mr. Seeber pay Entergy the $250 in attorney's fees that was awarded on August 5, 2004 when the protective order was issued plus legal interest from August 5, 2004, no one raises that part of the judgment on appeal. We thus do not address it.
[4] La. C.C.P. art.2088 states:

The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on, the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right to:
(1) Allow the taking of a deposition, as provided in Article 1433;
(2) Extend the return day of the appeal, as provided in Article 2125;
(3) Make, or permit the making of, a written narrative of the facts of the case, as provided in Article 2131;
(4) Correct any misstatement, irregularity, informality, or omission of the trial record, as provided in Article 2132;
(5) Test the solvency of the surety on the appeal bond as of the date of its filing or subsequently, consider objections to the form, substance, and sufficiency of the appeal bond, and permit the curing thereof, as provided in Articles 5123, 5124, and 5126;
(6) Grant an appeal to another party;
(7) Execute or give effect to the judgment when its execution or effect is not suspended by the appeal;
(8) Enter orders permitting the deposit of sums of money within the meaning of Article 4658 of this Code;
(9) Impose the penalties provided by Article 2126, or dismiss the appeal, when the appellant fails to timely pay the estimated costs or the difference between the estimated costs and, the actual costs of the appeal; or
(10) Set and tax costs and expert witness fees.
[5] For example, La. C.C.P. art. 2163 provides that a trial court has jurisdiction to try a peremptory exception of prescription that is pleaded for the first time on appeal if the plaintiff so requests. Id. Likewise, La. C.C.P. art.2005 contains a particular reservation of the trial court's jurisdiction, providing that "Lain action of nullity does not affect the right to appeal" and that "[a] judgment may be annulled prior to or pending an appeal therefrom, or after the delays for appealing have elapsed." La. C.C.P. art.2005. See Assensoh v. Diamond Nails, 04-1130 (La.App. 4 Cir. 2/16/05), 897 So.2d 806.