**DARVIN CASTRO SANTOS**     \*     **NO. 2025-CA-0246**

**VERSUS**     \*     **COURT OF APPEAL**

**STATE OF LOUISIANA**     \*     **FOURTH CIRCUIT**

    \*     **STATE OF LOUISIANA**

\* \* \* \* \* \* \*

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 23-1004, DIVISION "E"
Honorable Eric A. Bopp
\* \* \* \* \* \*
**Judge Rachael D. Johnson**
\* \* \* \* \* \*

(Court composed of Chief Judge Roland L. Belsome, Judge Paula A. Brown, Judge Rachael D. Johnson)

Liz Murrill
LOUISIANA ATTORNEY GENERAL
J. Bryant Clark, Jr.
J. Taylor Gray
LOUISIANA DEPARTMENT OF JUSTICE
Post Office Box 94005
Baton Rouge, Louisiana 70804


      COUNSEL FOR STATE/APPELLEE


Zachary T. Crawford
Merrill Berkowitch
Jee Park
INNOCENCE & JUSTICE LOUISIANA
4051 Ulloa Street
New Orleans, LA 70119


      COUNSEL FOR PLAINTIFF/APPELLANT

                                   **AFFIRMED**
                                **DECEMBER 19, 2025**

RDJ
RLB
PAB

Appellant, Defendant Darvin Castro Santos, seeks review of the January 10, 2025 district court ruling denying his petition for wrongful conviction compensation pursuant to La. R.S. § 15:572.8. Finding no manifest error, we affirm the district court's ruling.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

*Appellant's Conviction*

On July 17, 2009, several men departed Houston, Texas in a stolen Dodge SUV. The next day, four men robbed the Gold Star Diner in Chalmette, Louisiana. Eyewitnesses to the robbery include Baker and Amani Jaber, owners of the diner, as well as John Fleming, a customer and former FBI agent. During the altercation, the men held both Mr. Jaber and Mr. Fleming at gunpoint. Upon fleeing, the men left behind several items at the scene, including: two zip ties, which were used to bind Mr. Fleming; a plastic bag, which the robbers used to collect stolen money; a Styrofoam cup; and two baseball caps. Forensic cell phone records show that after the robbery, the men fled to Mississippi.

On August 28, 2009, police happened to stop the stolen Dodge SUV for a traffic violation in Medina, Texas. Appellant was in the passenger seat of the car at

1

the time of the traffic stop. Because there was an outstanding warrant for the stolen car, Medina police arrested Appellant and the driver, Selvin Rodriguez ("Rodriguez"), an admitted participant in the robbery. On September 22, 2009, eyewitness Mr. Fleming identified Appellant from a photo line-up as the perpetrator who put a gun to his face and forced him to the ground.

Appellant's trial took place January 18-20, 2012. At trial, Mr. Jaber, Ms. Jaber, and Mr. Fleming each identified Appellant as one of the perpetrators of the crime. Contrastingly, Rodriguez testified that another man, Rene Benitez ("Benitez"), was the true perpetrator for whom Appellant was mistaken.

On January 20, 2012, Appellant was found guilty as charged of two counts of armed robbery. He was sentenced to fifty years in prison for each count, with the sentences to run concurrently. This Court affirmed his convictions and sentences in 2013.[1] The Louisiana Supreme Court denied Appellant's writ application in 2015.[2]

*Post-Conviction Relief*

On August 19, 2016, Appellant filed an Application for Post-Conviction Relief and Post-Conviction DNA testing. In this application, Appellant put forth claims of ineffective assistance of counsel and anti-immigration prejudice from the State. On November 16, 2020, Appellant supplemented his application to include claims of actual innocence, a prejudiced juror, and an unconstitutional non-unanimous verdict. Included in the supplement to the application was the following evidence: DNA profiles from the zip ties and a plastic bag handled by one of the men involved in the robbery, each of which excluded Appellant as a contributor;

---

[1] *State v. Santos-Castro*, 2012-0568 (La. App. 4 Cir. 7/31/13), 120 So. 3d 933.
[2] *State ex rel. Santos-Castro v. State*, 2013-2151 (La. 6/5/15), 171 So. 3d 940 (Mem).

Appellant's work records, showing that he worked in Houston the day before the robbery; forensic cell records allegedly belonging to Rodriguez and Benitez, which Appellant argued showed that the men were traveling toward St. Bernard the day before the robbery, when Appellant was still in Houston; an affidavit from a juror, stating that anti-Hispanic prejudice infected the jury deliberations; and an affidavit from an attorney on Appellant's case at the time of his conviction, explaining that Appellant's counsel had his work and cell records (*i.e.*, alibi evidence) at the time of trial but did not further develop this evidence.

The court severed the issues for contradictory hearing. On June 2, 2021, a hearing was held for the Post-Conviction Application on the issues of post-conviction DNA test results and unconstitutional infection of the jury with (anti-Hispanic) prejudice. On July 22, 2021, the court denied Appellant's Application for Post-Conviction Relief on these issues. The court found that the DNA testing failed to establish by clear and convincing evidence Appellant's innocence based on jurisprudence which states that an inconclusive or negative test does not exculpate a petitioner. Moreover, the court found that the evidence of prejudicial language did not establish a violation of Appellant's due process and equal protection rights.

Before the contradictory hearing took place on the other remaining issues raised in the Post-Conviction Application, on August 2, 2021, Appellant and the St. Bernard Parish District Attorney jointly moved to vacate his conviction and dismiss the charges. The district court ordered that Appellant's conviction be vacated and that he be released from custody.

*Wrongful Conviction Compensation Claim*

On August 1, 2023, Appellant filed a petition for wrongful conviction compensation and requested a contradictory hearing. Prior to the hearing, the district court granted the State's motion *in limine* to exclude 11 documents (referred to as affidavits, yet they were not in proper form) in the post-conviction record. The affiants included several of Appellant's co-workers (who corroborated his alibi), acquaintances (who attested to the criminal activities of Benitez), and two of the jurors in his original trial (who said that racism infected the jury pool). None of these affiants were listed to testify at the contradictory hearing. The district court excluded the affidavits of Appellant's co-workers and acquaintances on the grounds that without the opportunity for the State to cross-examine the affiants and assess their credibility, the affidavits amounted to inadmissible hearsay and deprived the State of its due process right. As for the jurors, the court found that their affidavits and any testimony are barred pursuant to the jury shield rule, which prohibits disclosure of jury deliberations.[3]

Appellant's witnesses at the contradictory hearing were: Jack Largess, a post-conviction investigator with Innocence & Justice Louisiana, who testified to his efforts in developing evidence of Appellant's innocence; Shelton MacDonald, CEO of the company for whom Appellant worked on the day of the crime, who

---

[3] LA. CODE EVID. art. 606(B) states, in pertinent part:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror . . . Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

explained that Appellant must have been physically at the jobsite to pick up his check on Friday, July 17, 2009; Dr. Scott Inch, an expert in forensic cell phone analysis, who testified to information in his two reports showing how cell phone records from two cell phones, purportedly belonging to Rodriguez and Benitez, corroborated Rodriguez's identification of Benitez as the true perpetrator based upon the movements of their phones; William Brooks, retired police chief, who was offered and admitted as an expert witness in eyewitness identification, though he was prohibited from testifying about factors arising at the time of the crime that affect a later identification and was limited to discussion of the identification procedures themselves; and Rodriguez, who again testified that Appellant was not involved and that Benitez was the armed robber for whom Appellant was mistaken.

The district court denied Appellant's wrongful compensation claim, finding that he did not sufficiently prove his factual innocence as required by the Wrongful Conviction Compensation Statute.[4]

In its reasons for judgment, the district court explained that Mr. Fleming's identification of Appellant was "credible and compelling," while Mr. Brooks' expert testimony in eyewitness identification was too general to overcome the specificity of Mr. Fleming's identification. Moreover, the court found that the cell phone records may have proved Rodriguez's and Benitez's movements on the days surrounding the robbery, but it did not prove Appellant's absence from the robbery; notably, Appellant did not produce his own cell phone records. In that same vein, the court found that the DNA profiles may have excluded Appellant from interacting with the specific items tested, but did not definitively prove his

---

[4] As per La. R.S. § 15:572.8(A)(2), a petitioner must prove by clear and convincing evidence that he is "factually innocent of the crime for which he was convicted."

5

absence from the robbery. Mr. Fleming testified that Appellant was the perpetrator who pointed a firearm at him rather than the perpetrator who zip-tied him. Similarly, the court found that the work records only showed that Appellant was in Houston the day before the robbery and did not prove his whereabouts on the day of the robbery.

In sum, the district court found that Appellant "failed to provide any credible evidence to establish that he was not present in the Gold Star Diner, in Chalmette, Louisiana on July 18, 2009." His trial testimony, according to the court, was "self-serving, contradictory and not credible in regard to his alibi." Therefore, after a review of all evidence admitted into the record, the court did not find that Appellant proved his factual innocence by clear and convincing evidence. As such, on January 10, 2025, the district court denied Appellant's Petition for Compensation for Wrongful Conviction and Imprisonment Pursuant to La. R.S. § 15:572.8.

## ASSIGNMENT OF ERROR

On appeal, Appellant contends that the district court erred in misapplying La. R.S. § 15:572.8 and, as a result, denying Appellant's wrongful conviction compensation claim despite objective evidence of his factual innocence.

## STANDARD OF REVIEW

Appellant claims that the district court committed legal error, thereby warranting this Court's *de novo* review. However, as this Court has previously stated, "[i]n reviewing an application for compensation for wrongful conviction and imprisonment pursuant to La. R.S. § 15:572.8, an appellate court 'must afford great weight to the findings of the trier of fact and apply the manifest error standard.'" *Ballard v. State*, 2024-0606, p. 19 (La. App. 4 Cir. 3/14/25), 414 So. 3d

6

800, 810 (quoting *State v. Ruano*, 2019-0709, p. 4 (La. App. 4 Cir. 3/4/19), 294 So. 3d 44, 46).

## APPLICABLE LAW

The Wrongful Conviction Compensation Statute, La. R.S. § 15:572.8, "'is *sui generis*, and governs a unique situation' such that it is 'the only relevant authority governing' petitions for compensation for wrongful conviction and imprisonment." *Jones v. State*, 2022-01455, p. 4 (La. 5/5/23), 362 So. 3d 341, 344 (quoting *Burge v. State*, 10-2229, p. 6 (La. 2/11/11), 54 So. 3d 1110, 1113).

La. R.S. § 15:572.8 provides, in pertinent part:

> A. A petitioner is entitled to compensation in accordance with this Section if he has served in whole or in part a sentence of imprisonment under the laws of this state for a crime for which he was convicted and:
>> (1) The conviction of the petitioner has been reversed or vacated; and
>> (2) The petitioner has proven by clear and convincing scientific or non-scientific evidence that he is factually innocent of the crime for which he was convicted.
> B. For the purposes of this Section, "factual innocence" means that the petitioner did not commit the crime for which he was convicted and incarcerated nor did he commit any crime based upon the same set of facts used in his original conviction.
> * * *
> D. . . . The court may consider any relevant evidence regardless of whether it was admissible in, or excluded from, the criminal trial in which the petitioner was convicted.

As the Louisiana Supreme Court previously explained in *Jones*, to meet the "clear and convincing" burden of proving factual innocence, a petitioner must only demonstrate it is "highly probable or much more probable than not that he did not commit the crime." p. 5, 362 So. 3d at 344. The Wrongful Conviction Compensation Statute permits liberal consideration of "any relevant evidence," La. R.S. § 15:572.8(D), "regardless of whether it was admissible in the criminal trial

7

wherein the petitioner was convicted." *Id.*, 362 So. 3d at 345, citing La. R.S. § 15:572.8(A)(2) and (D).

In *State v. Walter*, this Court explained several ways a petitioner can prove his factual innocence:

> Examining La. R.S. 15:572.8, the Fifth Circuit identified three methods by which a petitioner may prove that he did not commit a crime:
>
> First, the petitioner may produce probative, affirmative evidence that another person perpetrated the crime [. . .] Second, the petitioner may point out the absence of evidence establishing him as the perpetrator of the crime or attempt to cast into doubt the prosecution's evidence [. . .] Third, the petitioner may provide evidence of absence or evidence that excludes him as the perpetrator of the crime. Such evidence, as contemplated by the statute, may be scientific such as DNA evidence . . . or non-scientific evidence, such as alibi testimony . . . or some other kind of physical evidence, that may directly or circumstantially exclude the petitioner as the perpetrator of the crime.

2024-0420, p. 8 (La. App. 4 Cir. 4/29/25), 414 So. 3d 1009, 1015.

## DISCUSSION

Appellant argues that the district court misapplied the burden of proof by failing to give proper weight to non-alibi evidence as proof of innocence and by failing to collectively weigh the evidence of innocence against the evidence of guilt. Further, Appellant avers that the district court erred by excluding relevant affidavits and by limiting his expert's testimony regarding eyewitness identifications.

Conversely, the State contends that Appellant failed to establish that the district court misapplied the burden of proof and that the court manifestly erred by excluding the affidavits, limiting Mr. Brooks' expert testimony, and making the factual determinations which led to the denial of Appellant's wrongful conviction compensation claim.

8

*Did the district court err in not considering Appellant's evidence cumulatively?*

The crux of Appellant's argument is that the district court manifestly erred by drawing incorrect conclusions about the evidence presented by both Appellant and the State. Appellant argues, in part, that the district court erred by not considering evidence of Appellant's innocence cumulatively. For example, Appellant seems to argue that while his work records offered into evidence are not wholly convincing on their own, they should be considered in conjunction with other evidence such as cell phone records – which show that two individuals, allegedly Rodriguez and Benitez, departed Houston on July 17, 2009, while Appellant worked – and Rodriguez's testimony, which claims that Appellant did not have a car and could not drive (thereby implying that if Appellant did not depart with Rodriguez in Houston, he would not have been able to reach the Gold Star Diner on July 18, 2009). This Court will address each piece of evidence which the district court materially relied on in its judgment.

<u>DNA Profiles</u>

It is undisputed that Appellant's DNA was not found on any of the items left at the scene of the crime. However, this squarely comports with Mr. Fleming's testimony. Mr. Fleming consistently testified that Appellant was the perpetrator who pointed a gun at him. No witness has ever asserted that Appellant handled the zip ties or the Walmart bag. Therefore, the DNA results do not necessarily exculpate Appellant as the perpetrator who held a gun to Mr. Fleming's face.

<u>Cell Phone Records</u>

Appellant offered, purportedly, the cell phone records of Rodriguez and Benitez. These records allegedly show that Rodriguez and Benitez traveled together on the days surrounding the robbery, yet that they were apart on the day of

Rodriguez and Appellant's arrest. However, at no point does Appellant definitively prove that these cell phone records belong to those individuals.

Assuming *arguendo* that the records indeed do belong to Rodriguez and Benitez, these records only show that Benitez may have also been implicated and do not exculpate Appellant. Showing that another man, Benitez, was present at the robbery is consistent with the facts of this case, namely, that four men committed this robbery. However, showing that another individual was involved in the robbery does nothing to exculpate Appellant as another perpetrator. Even more notably, Appellant never offered his own phone records in support of his claims.

Rodriguez Testimony

Appellate courts do not make credibility determinations about witnesses who testified at trial. As the Louisiana Supreme Court has stated,

> "[A] court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong,' and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable."

*Rosell v. ESCO*, 549 So. 2d 840, 844 (La. 1989) (quoting *Arceneaux v. Domingue*, 365 So. 2d 1330, 1333 (La. 1978)). As such, absent manifest error, this Court must defer to the district court's credibility determinations regarding witnesses and their testimony.

The district court found that Rodriguez was not a credible witness, given his inconsistent testimony at Appellant's original trial, the hearing for post-conviction relief, and the wrongful conviction compensation hearing. For example, Rodriguez originally testified that his brother was the perpetrator of the robbery rather than

himself; he then rescinded this statement and pled guilty after DNA testing of various items from the scene of the robbery proved he was a participant.

The fact that Rodriguez previously made false statements in his testimony reasonably calls into question the credibility of any statements he made thereafter.

Work Records

Appellant's work records show that Appellant worked for nine hours on July 17, 2009, the day before the robbery. However, the work records contain no entries for July 18, 2009, the day of the robbery.

Despite Appellant's assertion that a proper weighing of the evidence would result in a finding of Appellant's factual innocence, this Court finds that the district court was not manifestly erroneous in denying Appellant's wrongful conviction compensation claim. The evidence Appellant presented to prove his factual innocence did not meet the clear and convincing standard, even when considered cumulatively rather than individually. Moreover, the district court correctly excluded unauthenticated "affidavits" and validly limited the testimony of Appellant's expert to the area in which the expert was actually qualified.

Even considering these pieces of evidence cumulatively, we do not find that the court was manifestly erroneous in its finding that Appellant did not meet his burden of proving his factual innocence. At no point does Appellant definitively prove that the cell phones belonged to Rodriguez and Benitez; regardless, as stated above, it does not prove Appellant's absence. Similarly, the district court found that Rodriguez was not a credible witness, and therefore, the implication that Appellant would have no other way to travel to the Gold Star Diner on July 18, 2009 after working a full day on July 17 holds no weight.

Nonetheless, it is not clear that the district court indeed failed to consider this evidence cumulatively. Appellant's argument that the district court so erred is without merit.

*Did the district court manifestly err in its evaluation of the State's evidence?*

As stated above, an appellate court must defer to credibility determinations made by a lower court absent manifest error.

The district court found Mr. Fleming's testimony consistent and credible. The account which Mr. Fleming gave at the wrongful conviction compensation contradictory hearing was markedly similar to the account given at Appellant's original trial.

Despite the possibility that eyewitness identifications can be incorrect, Appellant did not present any credible evidence that contradicts or undermines Mr. Fleming's testimony. As was explained previously, the DNA evidence, cell phone records, and work records each comport with Mr. Fleming's testimony; the only evidence properly admitted which refutes his testimony was the testimony of Rodriguez, which the district court reasonably found lacked credibility. Thus, the district court did not manifestly err in finding that the evidence presented to prove Appellant's innocence failed to outweigh Mr. Fleming's testimony, which credibly implicated Appellant in the robbery.

Appellant cites *Ruano*, a wrongful conviction compensation case in which this Court found that the petitioner's "objective, uncontroverted evidence far outweighed the eyewitness testimony (subjective evidence) of the victims." 2019-0709 at p. 10, 294 So. 3d at 49. In *Ruano*, an assailant attacked and bit off the ear of a driver stranded on the interstate. *Id.* at pp. 1-2, 294 So. 3d at 45. Mr. Ruano was convicted of aggravated battery, simple burglary, and second-degree battery

12

based on three eyewitness identifications. *Id.* at pp. 2-3, 294 So. 3d at 46. After Mr. Ruano's conviction was overturned, a district court denied his wrongful conviction compensation claim, despite bite-mark evidence which a forensic odontologist testified was sufficient to exclude Mr. Ruano as the victim's assailant. *Id.* at p. 3, 294 So. 3d at 46. This Court determined that Mr. Ruano's exculpatory evidence outweighed the eyewitness testimony and reversed the district court's denial of his wrongful conviction compensation claim. *Id.* at pp. 10-11, 294 So. 3d at 49-50.

*Ruano* is not factually comparable to the case *sub judice*. In *Ruano*, there was exculpatory evidence which was clear and convincing proof of Mr. Ruano's innocence. An expert presented forensic odontological evidence which plainly proved that Mr. Ruano could not have bitten the victim, and thus, it is sensible that such evidence should outweigh the eyewitness identifications. Here, none of Appellant's evidence meets this standard. The evidence presented only potentially implicates an additional person, Benitez, but does not prove Appellant's absence from the robbery. This evidence does not rise to the level of "objective, uncontroverted evidence" that should "outweigh[] the eyewitness testimony (subjective evidence) of the victims."

After having addressed the evidence which the district court did consider, we now turn to the evidence which Appellant claims the court manifestly erred in excluding.

*Did the district court manifestly err in excluding Appellant's proposed affidavits?*

Appellant argues that the district court erroneously excluded 11 affidavits from a range of individuals, including Appellant's former coworkers, jurors in his original trial, and acquaintances. Several of these "affidavits" were not notarized, making them mere signed statements. Appellant's counsel did not call these

13

individuals as witnesses to testify and authenticate these documents, which would make the documents inadmissible hearsay and not eligible for consideration by the court.

Appellant maintains that he was not required to call these individuals to testify and authenticate the documents, primarily relying on the argument that the wrongful conviction compensation statute is *sui generis* and does not abide by the typical evidentiary rules of a civil or criminal proceeding. Specifically, Appellant references La. R.S. 15:572.8(2)(D), which states ". . . The court may consider *any relevant evidence* regardless of whether it was admissible in, or excluded from, the criminal trial in which the petitioner was convicted." (Emphasis added).

Of the documents excluded by the district court, only two were related to Appellant's alibi and therefore might have helped prove his factual innocence. Neither of these were notarized. Thus, the core consideration is whether unnotarized/unauthenticated documents meet the definition of "evidence" contemplated by the statute.

The signatories of the signed statements were brothers Israel and Carlos Jaime. Both worked with Appellant at Joslin Construction, the company where Appellant was employed at the time of the robbery. Each of them explained that it "wasn't strange" or "wasn't rare" for Appellant to spend hours on Saturdays doing gardening work or other tasks at their father's house. They had no specific memory of Appellant's activities on July 18, 2009, given that several years had passed between that date and the dates of the affidavits.

We find that the district court determining that mere signed statements do not meet the evidentiary threshold required by the statute was not manifestly erroneous. Though the *sui generis* wrongful conviction compensation statute

allows for consideration of "any relevant evidence," this does not permit the court to abandon the rules of evidence. In preliminary proceedings prior to the contradictory hearing, the district court dispelled Appellant's argument that this statutory language means "we take the book of evidence and just throw it out" or treat it as though it's "non-existent." Although the documents would be "relevant," it is unclear how mere signed, unauthenticated statements amount to the definition of "evidence" contemplated by the statute.

Even if these documents were admitted, it is not clear to this Court how either of them would be clear and convincing proof of Appellant's absence from the robbery. The assertion that it "wasn't rare" for Appellant to spend hours on Saturdays this way does not rise to the level of clear and convincing exculpatory evidence.

Regarding the affidavits that were properly notarized, the district court still did not manifestly err in excluding them. In the contradictory hearing and the preceding proceedings, the district court was clear that it would consider the affidavits if Appellant produced the affiants to testify so that it could assess the credibility of the affiants. Without the affiants present, their affidavits are hearsay.[5]

---

[5] The Louisiana Supreme Court has defined "hearsay" evidence as ". . . written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value on the credibility of the out-of-court asserter." *State v. Martin*, 356 So. 2d 1370, 1373-74 (La. 1978) (quoting C. McCormick, Evidence § 246 (Cleary ed. 1972).

Regarding affidavits, this Court stated the following in *Reuther v. Smith*:

> Generally, an affidavit is inadmissible as hearsay. *King's Joint Venture v. Marino*, 02–0847, p. 4 (La. App. 4 Cir. 9/25/02), 827 So. 2d 521, 524, citing *Arkla, Inc. v. Maddox and May Bros. Casing Service, Inc.*, 624 So. 2d 34, 36 (La. App. 2 Cir. 1993). In the rare instances where an affidavit is acceptable as a substitute for testimony, an affidavit must be based on personal knowledge, must set forth only facts admissible in evidence, and must show that the affiant is competent to testify to the matters contained therein. *Arkla, Inc.*, 624 So. 2d at 36 (citations omitted). A sworn affidavit is hearsay and is not competent evidence unless its use is

Appellant did not show that the affiants were unable to testify, which would trigger an exception to the hearsay rule.[6]

To summarize, we find no manifest error in the district court refusing to consider both affidavits and unnotarized documents whose authenticity could not be examined by the district court through testimony and by the State through cross-examination at the contradictory hearing.

*Did the district court manifestly err in limiting the testimony of Appellant's expert?*

The district court determined that Mr. Brooks was qualified to testify only on line-up identification procedures and not on conditions that can give rise to mistaken eyewitness identifications. The district court reasoned that the latter is rooted in psychological factors, a field in which Mr. Brooks offered no proof of expertise. As a retired police chief, he administered around 80-100 line-ups in his career and helped shape policy in the area; however, he had no training or degree in psychology, neuropsychology, or other related fields. As such, the district court determining that Mr. Brooks was not qualified to testify on psychological and/or environmental factors that cause mistaken or improper encoding of stressful events into memory was not manifestly erroneous.

In support of his argument that Mr. Brooks should have been allowed to discuss relevant psychological factors, Appellant compares the case *sub judice* to *State v. Alexander*. 22-12 (La. App. 5 Cir. 6/21/23), 367 So. 3d 867. There, the

---

specifically authorized by statute. *Board of Commissioners of Port of New Orleans v. Louisiana Commission on Ethics for Public Employees*, 416 So. 2d 231, 238 (La. App. 1 Cir.), *writ denied*, 421 So. 2d 248 (La. 1982); *see also Pyburn v. Walle Corporation*, 454 So. 2d 1128, 1130 (La. App. 4 Cir. 1984).

2005-0794, p. 7 (La. App. 4 Cir. 2/15/06), 926 So. 2d 9, 14-15.

[6] *See* LA. CODE EVID. art. 804, titled "Hearsay exceptions; declarant unavailable" (stating ". . . a declarant is 'unavailable as a witness' when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court.").

district court allowed an eyewitness identification expert to testify as to psychological factors which impact memory encoding, thereby casting doubt on the State's eyewitness evidence which inculpated the petitioner. *Id.* at pp. 21-23, 367 So. 3d at 883-85. However, the expert in *Alexander* had a PhD in the field of Cognitive Psychology. *Id.* at p. 17, 367 So. 3d at 897, n.7. Contrastingly, Mr. Brooks is a retired police chief with no formal degree in psychology or a related field. Therefore, it was appropriate for the district court to limit his testimony to the procedure of eyewitness identification.

## CONCLUSION

We find that the district court's denial of Appellant's wrongful conviction compensation claim pursuant to La. R.S. 15:572.8 was not manifestly erroneous. Appellant did not present any clear and convincing evidence that proved he is factually innocent and did not commit armed robbery or any other crime in connection with the events of July 18, 2009 at the Gold Star Diner in Chalmette, Louisiana. Therefore, the district court's judgment is affirmed.